392 A.2d 723

**COMMONWEALTH of Pennsylvania**

v.

**James E. PAYTON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 29, 1978.
Decided Oct. 20, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, and Edward G. Rendell, District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

JACOBS, President Judge:

Appellant James Payton was convicted by the Honorable Alfred J. DI BONA, Jr. sitting without a jury of attempted rape and indecent assault. His post trial motions were denied and he was sentenced to a term of imprisonment of not less than two and one-half and not more than five years for attempted rape; sentence was suspended on the indecent assault conviction. The only issue raised on this appeal is whether the trial court abused its discretion in ruling that the six year old complaining witness was competent to testify. We hold that the court did not abuse its discretion and, accordingly, affirm.

"Competency is the rule and incompetency the exception. . . . The burden to show incompetency lies upon the party who asserts it. [Citations omitted.]" *Rosche v. McCoy*, 397 Pa. 615, 619–20, 156 A.2d 307, 309 (1959). No two witnesses are alike. It follows, therefore, that every determination of competency must be individual and that the facts presented in other cases dealing with competency of a witness cannot be controlling in a subsequent case.

■■■ Two generalizations, however, do control in all competency cases. First, the competency of a witness is a matter for the trial court to determine and that determination will not be reversed absent a clear abuse of discretion by the court. *Commonwealth v. Baker*, 466 Pa. 479, 484, 353 A.2d 454, 457 (1976). Second, in order to find a witness competent

> There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Rosche v. McCoy*, 397 Pa. at 620–21, 156 A.2d at 310.

■■ A review of appellant's brief indicates that he challenges only the third criterion—whether the child had a consciousness of her duty to speak the truth. In support of his argument he states that the witness lied during the voir dire, that she could not give an accurate example of conduct which would constitute lying, and that the Assistant District Attorney coached her concerning punishment by God. We do not entirely disagree with appellant's assertions. Even given these circumstances, however, the trial court did not abuse its discretion in finding her to be competent.

There is more to a child's consciousness of the duty to speak the truth than being able to give a clear example of a lie or to understand the concept of an "oath." In fact, the trial judge's opportunity to observe the demeanor, alertness, thoughtfulness, and sincerity of a child witness may be more informative than the answers the child gives to questions such as "What is a lie?" and "What will happen to you if you tell a lie?" *See Commonwealth v. Mangello*, 250 Pa.Super. 202, 206, 378 A.2d 897, 899, *allocatur refused*, Pa.Super. (1977).

Two authorities would abolish any attempt to discern a child witness' understanding of the necessity to tell the truth and would admit the child's testimony allowing it to become an issue of credibility for the trier of fact to deter-

mine. McCormick, *Evidence* § 62 (2d ed. 1972); 2 Wigmore, *Evidence* § 509 (3d ed. 1940); 6 Wigmore, *Evidence* § 1821 (Chadbourn rev. 1976). While we are precluded from taking such a step by our Supreme Court's decision in *Rosche v. McCoy*, Wigmore's rationale for this approach is nevertheless relevant to the case before us now:

> A rational view of the peculiarities of child-nature, and of the daily course of justice in our courts, must lead to the conclusion that the effort to measure 'a priori' the degrees of trustworthiness in children's statements, and to distinguish the point at which they cease to be totally incredible and acquire suddenly some degree of credibility, is futile and unprofitable. . . . Recognizing on the one hand the childish disposition to weave romances and to treat imagination for verity, and on the other the rooted ingenuousness of children and their tendency to speak straightforwardly what is in their minds, it must be concluded that the sensible way is to put the child upon the stand and let it tell its story for what it may seem to be worth. . . . To be genuinely strict in applying the existing requirement is either impossible or unjust; for our demands are contrary to the facts of child-nature[.] [Footnotes omitted.]

2 Wigmore, § 509.

> A child's inclination to tell the truth or the opposite is apt to be more a matter of instinct and of previous training and surroundings than of a conscious reflection upon the prospects of a future state.

6 Wigmore, § 1821.

The trial judge, here, had ample opportunity to observe the child and to determine her capacity to tell the truth. During the voir dire direct examination, she stated that it was wrong to tell a lie, that if she told a lie her mother would punish her, and that she would tell the truth while testifying. These statements were uncontradicted on cross examination. Appellant makes much of the fact that the child witness could not give an example of lying on cross-examination, and that in answer to the question "Does that

mean you don't know what a lie means?" she answered "Nope." The child witness did not give an accurate example of a lie; it is important to note, however, that she did describe conduct which would constitute misbehavior. Also, the examination concerning lying became more and more confused, as did her answers. Finally, the child's answer "Nope" to appellant's question technically means "No, that does not mean that I don't know what a lie means," or "Yes, I do know what it means to lie," *not* "I do not know what a lie means." In reality, the questioning and answering pattern was so confused by that time that it is not possible to determine what the child really meant.

Appellant also objects because the child admitted that she did not know God would punish her for telling a lie until the Assistant District Attorney told her so before the trial began. First, we note that in a situation such as this it should not matter who tells a child God will punish her for lying or when she is told, so long as she is aware of the concept of Divine punishment. It would be inappropriate to compare this with a situation where the District Attorney tells a witness what answers to give to questions directly related to the crime. Furthermore, we believe that the child's admission concerning the Assistant District Attorney is indicative of her truth telling nature. She did not lie about or try to hide the fact that the Assistant District Attorney had spoken to her. If the child was so honest on voir dire cross examination there is no reason to believe that she would not be honest on cross examination during trial. A review of her trial testimony reveals, however, that appellant's counsel could not impeach her testimony on direct.

The trial court originally determined the child to be competent to testify not only because of her answers during voir dire, but also because of his observations of her. N.T. 9–10. At any time, up to and including post verdict motions, the judge could have reversed himself and held her to be incompetent and her testimony of no value to the prosecution. There is no reason why, after an initial determination of competency, a trial judge cannot find more or less support

for his decision in a witness' trial testimony and demeanor. In this case, the child's testimony on direct and cross examination at trial clearly reinforced the court's initial determination.

On direct examination, the child testified that she first met appellant at her mother's house where he was painting a bedroom. She further stated that he took her to a park where he ordered her to remove her underpants. After she did so, he lay down on top of her and placed his penis between her legs. The child stated that she screamed but that appellant covered her mouth, made a fist, and told her not to tell her mother. Appellant then drove the child part way home. She walked the remainder of the way and, upon her arrival, told her sister what had happened. N.T. 10–15.

On cross examination, the child's testimony was somewhat confused. For example, she had a poor understanding of time concepts and she was unsure about whether, upon her return home, she spoke first to her mother or to her sister. She admitted that at the time of the incident she did not know the word penis and that she was told the word in the hall outside the courtroom before trial began. N.T. 27.[1] She also admitted talking to her mother about the case, but the conversation took place at the time of appellant's preliminary hearing, seven months before his trial. N.T. 30–33. Her only conversation with the Assistant District Attorney dealt with the necessity of the child's telling the court what happened to her when she was with the appellant on June 27, 1976, not with the details of what had occurred. N.T. 30–31. Appellant asked very few questions of the witness concerning what happened to her in the park, and her direct examination testimony remained basically unshaken.

The witness' testimony on direct and cross examination provided no basis for reversing the trial court's original determination that the witness was competent to testify. At most, her testimony when considered in conjunction with

---

1. On redirect examination, the witness made clear that she did know at the time of the incident what a penis was. Her only uncertainty concerned the proper word to use in referring to a penis. N.T. 36.

that of the other witnesses created a question of credibility. Credibility of a witness is an issue for the finder of fact, here the trial judge. The fact finder may believe all, part, or none of a witness' testimony. *Commonwealth v. Myrick*, 468 Pa. 155, 163, 360 A.2d 598, 602 (1976). We are precluded from disturbing the judge's determination as to credibility. Furthermore, a review of the entire record of this case convinces us that the trial judge did not abuse his discretion in finding the child witness to be competent to testify.

As this Court said in *Commonwealth v. Allabaugh*,

Since much must be left to the discretion of the trial judge in determining the competency of a witness of tender years [citation omitted], we cannot say in this case, although the answers of the witness in her voir dire were not altogether satisfactory, that the trial judge was guilty of an abuse of discretion in permitting her to testify.

"The substantial test of the competency of a infant witness is his intelligence, and his comprehension of an obligation to tell the truth. The truth is what the law, under the rules of evidence, is seeking; and if a full and present understanding of the obligation to tell it, is shown by the witness, the nature of his conception of the obligation is of secondary importance. . . . the witness clearly comprehended the difference between truth and falsehood, and his duty to tell the truth. That was the substance of qualification as a witness. *The trial judge in whose discretion the matter very largely rested was satisfied of the competency of the boy, and we are of opinion that his discretion was well exercised.*" (Emphasis added.) *Commonwealth v. Furman*, 211 Pa. 549, 550, 60 A. 1089; *Commonwealth v. Troy*, 274 Pa. 265, 270, 118 A. 252. [Emphasis in original.]

162 Pa.Super. 490, 492–93, 58 A.2d 184, 186 (1948). Here, Judge DI BONA heard the child testify and observed her behavior and demeanor throughout voir dire and trial. Despite the few unsatisfactory answers the child witness gave during voir dire, the trial court determined that she comprehended the difference between truth and falsehood and

understood her duty to tell the truth. We find that the court did not abuse its discretion in finding her competent to testify.

Judgment of sentence affirmed.

HOFFMAN, J., did not participate in the consideration or decision of this case.