# Commonwealth v. Miller.

516

*Jonathan Kurland,* for plaintiff.
*Brie R. Halfond,* for defendant.

LUDGATE, *J.*, March 1, 2013—Daniel Miller (hereinafter "defendant") appeals his conviction and judgment of sentence.

On March 19, 2012, the Commonwealth filed a three count information against defendant in Docket No. 969-2012 consisting of the following offenses:

1) Count 1, aggravated assault, 18 Pa. C.S.A. Section 2702(a)(1);

2) Count 2, simple assault, 18 Pa. C.S.A. Section 2701(a)(1); and

3) Count 3, endangering the welfare of a child, 18 Pa. C.S.A. Section 4304(a)(1).

On October 18, 2012, following a two-day jury trial, defendant was found guilty of the following:

1) Count 2, simple assault, 18 Pa. C.S.A. Section 2701(a)(1); and

2) Count 3, endangering the welfare of a child, 18 Pa. C.S.A. Section 4304(a)(1).

On November 7, 2012, defendant appeared before this court for sentencing and the court imposed the following sentence:

1) Count 3, endangering the welfare of a child, 18 Pa. C.S.A. Section 4304 (a)(1), fourteen (14) months to sixty (60) months incarceration, 267 days time served.

2) Count 2, simple assault, 18 Pa. C.S.A. Section 2701(a)(1), twelve months (12) to sixty months (60) incarceration, running consecutive to the sentence imposed in count 3.

On appeal, the defendant raises four (4) detailed claims of error. The court asks that the defendant's appeal be denied, and his conviction and judgment of sentence affirmed.

## I. FACTUAL BACKGROUND

D.M., the victim, is a six-month-old baby. She was born premature and spent her first 11 days in the Neonatal Intensive Care Unit (NICU). Notes of Testimony ("N.T."), Trial, at 126-127. Upon discharge from the NICU, D.M. was given an apnea monitor so her breathing could be monitored by her family. N.T., Trial at 126-127. On November 16, 2011, at some point between approximately 3:00 P.M. and 5:00 P.M., at 329 Locust Street, Reading, Pennsylvania, Berks County, defendant was the sole adult in an upstairs room with his daughter, the victim, D.M.; her two-year-old brother, D.A.M[1].; and her four-year-old

---

1. This court recognizes that defendant's children share the same initials. Therefore, the court will use "D.A.M" to identify defendant's two-year-old son; and will use "D.M." to identify defendant's daughter, the six-month-old victim.

sister C.K. N.T., Trial, at 144-176. During the period of time in which defendant was alone with D.M., D.A.M. and C.K., Tamara Kerns, mother of D.M., and Rhonda Miller, defendant's sister, were preparing dinner for the family. N.T., Trial at 157-160. While Ms. Kerns and Ms. Miller were preparing dinner, C.K., came downstairs and reported to her mother, Ms. Kerns, that D.M. was crying. N.T., Trial, at 157-160. Ms. Kerns went upstairs for a couple of minutes and calmed D.M. down. N.T., Trial, at 157-160.

After dinner, around 5:30 P.M., D.M. began to vomit. N.T., Trial, at 112 and 163. In response to D.M.'s vomiting, Ms. Miller went out to purchase Pedialyte to see if the Pedialyte could curb D.M.'s vomiting. N.T., Trial, at 165-166. When Pedialyte proved unsuccessful, defendant called for an ambulance. N.T., Trial, at 166-167. While changing D.M. before the ambulance arrived, the defendant and Ms. Miller brought to Ms. Kerns' attention that D.M. had bruises on her body. N.T., Trial, at 167-168.

When the ambulance arrived, D.M. was taken to the emergency room at Reading Hospital. By the morning of November 17, 2011, D.M. had already been transferred to the Children's Hospital at Hershey Medical Center. Andrea Taroli M.D. was called in as a consultant. N.T., Trial, at 107-108. Dr. Taroli's diagnosis of D.M.'s injuries included bruising around the kidney; bruising around the sternum and breast bone; subdural hemorrhages; subdural hemorrhages around the brain as well as around the spinal cord; retinal hemorrhages; and slight anemia, which represented blood loss into the bleeding around the brain and the bruises. N.T., Trial, at 113-115.

Dr. Taroli testified that D.M.'s injuries were caused by someone grasping the child and squeezing her chest about 12-18 hours prior to the time Dr. Taroli examined D.M., N.T., Trial, at 113-124.

On the same day as Dr. Taroli's examination, C.K. told Nicole Robinson, an employee at Berks County Children and Youth Services, that she saw her father, in an angry state, "squish" D.M. N.T., Trial at 198-200 and 234-237. C.K. reiterated the same story to Ms. Robinson on December 15th, when C.K. used a doll to show Ms. Robinson how her father squeezed D.M. N.T., Trial, at 234-237.

On February 14, 2012, the defendant was arrested.

## II. PROCEDURAL HISTORY

On October 18, 2012, following a two-day jury trial, defendant was found guilty of the following:

1) Count 2, simple assault, 18 Pa. C.S.A. Section 2701(a)(1); and

2) Count 3, dndangering the welfare of a child, 18 Pa. C.S.A. Section 4304 (a)(1).

On November 7, 2012, defendant appeared before this court for sentencing. The defendant's offense gravity score, prior record score, applicable sentencing guidelines, and sentence recommendations were placed on the record:

The Court: ... So with a prior record score of 2, the offense gravity score for the Simple Assault?

Assistant District Attorney (Mr. Kurland): Is a 4, your

honor, which would make the guidelines restorative sanctions to not less than 12 months – up to 12 months. The aggravated range going up to 15 months.

The Court: And mitigated wouldn't be applicable.

Assistant District Attorney (Mr. Kurland): Correct.

The Court: And he was also charged with endangering the welfare of children.

Assistant District Attorney (Mr. Kurland): That —

The Court: Does that merge?

Assistant District Attorney (Mr. Kurland): No, it would not, your honor. It has different elements. That – he was at. That has an offense gravity score of 5. The standard range would be 3 to 14 months. The mitigated range would begin at restorative sanctions. The aggravated range would go up to 17 months.

The Court: And the defendant's adopted the written presentence investigation report.

Why don't you put the recommendation from the Commonwealth, and then, of course, I'll hear from Mr. Fitzgerald.

Assistant District Attorney (Mr. Kurland): Thank you, your honor

...

Assistant District Attorney (Mr. Kurland): That on the endangering welfare of children, that you impose

a sentence of 14 to 60 months, followed by 12 to 60 months on the simple assault. This would be a —

The Court: Twelve to how many months?

Assistant District Attorney (Mr. Kurland): To 60 months. It's a misdemeanor of the first degree because the victim was under 12 —

...

Assistant District Attorney (Mr. Kurland): The total recommended sentence on both counts, your honor, would be 26 months to 120 months, or just over 2 years, with a maximum of 10 years. Your honor, we recognize — in making this recommendation, we understand the defendant was acquitted of aggravated assault. We also understand that the fact that the victim was a minor is accounted for in the grading of the simple assault. We also recognize the defendant's prior offenses involving children is accounted for in the enhanced prior record score of 2 because the corruption of minors is worth one point in this because it's an M1 offense involving children. However

The Court: And then the corruption of minors — you mean —

Assistant District Attorney (Mr. Kurland): His prior. His prior.

The Court: His prior record was a corruption of minors. How long ago?

Assistant District Attorney (Mr. Kurland): That was in

1999 out of Northampton County.

The Court: Okay.

Assistant District Attorney (Mr. Kurland): Recognizing and conceding all those facts, your honor, we still think there's a reason — there's a basis in reason for the court to adopt what is a standard-range-sentence recommendation and a max at the tail. One, while the grading of the simple assault recognizes the child being under 18, and that's an element – or under 12 years of age, I think the court can also take note as an aggravating circumstance in fashioning the sentence that not only was the victim under 12, but the victim was 6 months old. The victim was one of the most defenseless of any children that abuse could be committed on. And the defendant knew at the time that he chose to abuse her that she had been in the NICU, she had been monitored, she had health problems. And even with the knowledge of that, he chose to take out this crime on the most defenseless of victims. Your honor also has a lot more awareness of the facts and background of this case from having presided at trial. And I would also note that when medical was called on for the victim, D.M., the defendant lied to medical providers when they were trying to save and help...

The defendant knew she was injured because he shook her. That's not something he told any ambulance paramedic. That's not something he told any doctor at Reading Hospital or NICU. So while they're trying to help the victim and ascertain a correct patient history to be able to help, the defendant was more worried

about saving his own skin and protecting himself than protecting the person he assaulted and that he was entrusted with, which I think should also be considered as an aggravating factor.

The Court: Except that you're not asking for an aggravated —

Assistant District Attorney (Mr. Kurland): No. I'm not, but these are factors that I would suggest to the court justify a top-of-the-standard-range sentence, as well as a high tail that I recommended, too. And I frame them as aggravating factors even though I'm not asking for the aggravated range or asking the court to abandon the guidelines entirely. And your honor, the third factor why I think the recommendation the Commonwealth has is warranted necessitates me offering into evidence Tamara Kerns to give a victim statement to the court about the impact this crime has had on the victim and her family.

...

[Ms. Kerns testified that D.M. will be placed in foster care and adopted in the near future and would be unable to ever know her family. She also testified, and placed into evidence, a letter that the defendant sent her blaming Detective Martinez (and using the word "spick" to describe him) for the situation the defendant is in.]

...

And in addition, your honor, while I recognize

the defendant's Fifth Amendment privilege not to incriminate himself, and that should not be any kind of factor at all in sentencing, I'd suggest to you what Commonwealth Exhibit No. 2 demonstrates is that rather than exercise his guaranteed and revered right to remain silent, what the defendant chose to do for his crimes and for his offenses is blame other people for his actions...

Sentencing Hg. 11/7/12, at 4-13.

Defendant's Attorney (Mr. Fitzgerald): I was going to ask for a – with regard to Count 3, endangering welfare of children, a sentence of 267 days to 23 months. Mr. Miller has 267 days time in, so it would be a time-served sentence. Followed by three years probation on the simple assault. These are both recommendations that fall within the guideline ranges. And certainly we've gone over those guideline ranges earlier.

The reason I'm asking for this sentence is certainly Mr. Miller has a prior record, one of which involves corruption of minors, which is certainly an offense that involves children. That particular offense, I believe, Mr. Miller was the oldest among teenagers, and they were shooting out some windows with a BB gun. I believe that was the basis of that corruption of minors charge. I'd also point out to the court that that is a – at this point, a 13 year-old case. He has a possession of marijuana, which is more recent, but still is five years old. So I'd ask the court to consider the age of his prior offenses. Also, as a result of the conviction, you heard Miss Kerns tell the court that the baby, D.M., who was the victim in

this matter, is going to be put up for adoption. The other children are at foster homes. Mr. Miller, regardless of what kind of sentence he gets here today, is going to be losing his parental rights with regard to baby D.M. He's not going to be a part of her life. He's not going to have any contact with his children, so they're going to be safe from that standpoint. And I'm sure the court could fashion a sentence whereby Mr. Miler's not to have any contact with any other minor children unless he is supervised, if that is what the court would want to order. With regard to the letter that Mr. Kurland gave to the court, certainly I would characterize the use of the language as disrespectful. I don't know — The Court: Racist, you know.

Defendant's Attorney (Mr. Fitzgerald): Racist, yes. I agree with what Mr. Kurland said about it. However, I don't know that it would rise to the level to perhaps influence the court to give a greater sentence than what the court might otherwise be disposed to.

Sentencing Hg. 11/7/12 at 14-16.

After recommendations were made, this court advised defendant of his right to speak:

The Court: Okay. Mr. Fitzgerald, I want to ask next if — if the defendant wishes to say anything, now is the time. You don't have to speak, but if you want to say anything, this is the time to say it.

The Defendant: No.

Sentencing Hg. 11/7/12 at 15-16.

Shortly thereafter, the court ordered the following sentence:

Endangering welfare of children, Count 3. The court notes as well that based upon what's already on the record, these fall within the standard range. November 7th, of 2012, the sentence is that Daniel Miller be committed for a period of not less than 14 months nor more than 60 months to the Bureau of Corrections for confinement in a state correctional facility. The defendant is not RRRI eligible by statute. Effective today; 267 days time served. The defendant will enter into, and successfully complete, an anger management program.

...

As it relates to Count 2, the sentence is that the defendant be committed for a period of not less than 12 months nor more than 60 months to the Bureau of Corrections for confinement in a state correctional facility. The defendant is not RRRI eligible by statute. This sentence shall commence at the expiration of the sentence imposed at 969 of '12, Count 3.

Sentencing Hg. 11/7/12, at 16-17.

On November 19, 2012, the defendant filed a timely post-sentence motion. On November 20, 2012, the court denied the defendant's Post-Sentence Motion.

On December 17, 2012, the defendant filed a notice of appeal to the Superior Court. On December 17, 2012, the court ordered the defendant to file a Concise Statement

of Matters Complained of on Appeal. The defendant filed a Petition for an Extension of Time to File a 1925(b) Statement, which was granted by this court on January 4, 2013. The defendant filed a Concise Statement on January 30, 2013. This opinion is pursuant to Pa.R.App.P. 1925(a).

## III. LEGAL ANALYSIS

On appeal, the defendant raises four (4) claims of error:

1. The evidence was insufficient to support the guilty verdicts for:

a) Count 2: simple assault, 18 Pa. C.S.A. Section 2701(a)(1), where the Commonwealth failed to prove beyond a reasonable doubt that Miller attempted to cause or intentionally, knowingly, or recklessly caused bodily injury to Juvenile, D.M.;

b) Count 3: endangering the welfare of children, 18 Pa. C.S.A. Section 4304(a)(1), where the Commonwealth failed to prove beyond a reasonable doubt that Miller, while being a parent, guardian or other person supervising the welfare of a child under 18 years of age, knowingly endangered the welfare of the child by violating a duty of care, protection or support.

2. The court erred by not granting a new trial on the basis that the guilty verdicts were so contrary to the weight of the evidence presented as to shock one's sense of justice, where:

a) Tamara Kerns' testimony was so unreliable, in that

her testimony was contradictory and inconsistent in regards to material and non-material matters, that the resulting verdicts were based upon nothing more than surmise or conjecture;

b) Rhonda Miller's testimony was so unreliable, in that her testimony was contradictory and inconsistent in regards to material and non-material matters, that the resulting verdicts were based upon nothing more than surmise or conjecture;

c) Juvenile, C.K.'s testimony, the only eyewitness testimony, was unreliable given her age at the time of the alleged incident and at the time of trial, and where C.K. had substantially difficulty in distinguishing between reality and fantasy.

3. The court abused it discretion by imposing consecutive sentences for Counts 2 and 3, resulting in an aggregate sentence of twenty-six (26) months' to ten (10) years' incarceration, where such sentencing scheme was manifestly excessive given the circumstances of the case.

4. The court abused its discretion by imposing a sentence of total confinement without considering the requisite factors under 42 Pa. C.S.A. Section 9725.

The court will consider each claim in turn.

1. The evidence was insufficient to support the guilty verdicts for:

a) Count 2: simple assault, 18 Pa. C.S.A. Section 2701(a)(1), where the Commonwealth failed to prove beyond a reasonable doubt that Miller attempted to

cause or intentionally, knowingly, or recklessly caused bodily injury to Juvenile, D.M.;

b) Count 3: endangering the welfare of children, 18 Pa. C.S.A. Section 4304(a)(1), where the Commonwealth failed to prove beyond a reasonable doubt that Miller, while being a parent, guardian or other person supervising the welfare of a child under 18 years of age, knowingly endangered the welfare of the child by violating a duty of care, protection or support.

"As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Stays*, --- A.3d ----, 2012 WL 727184, *5 (Pa. Super. 2012) (internal citations and quotations omitted). The court will address each claim of insufficient evidence in turn.

### a. Count 2: Simple Assault, 18 Pa. C.S.A. Section 2701(a)(1)

The defendant argues that the evidence was insufficient to sustain a conviction for simple assault, 18 Pa. C.S.A.

Section 2701(a)(1). A person is guilty of simple assault, 18 Pa. C.S.A. Section 2701(a)(1), if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." Here, the Commonwealth presented testimony from Ms. Miller, Ms. Kerns and C.K., that the defendant was the sole adult with D.M. for a long period of time around 3:00-5:00 P.M. N.T., Trial at 158-160, 198, and 214-216. Moreover, C.K. testified that she saw the defendant squeeze D.M. N.T., Trial, at 198-200. Furthermore, the Commonwealth provided testimony by Dr. Taroli that the injuries sustained by D.M. typically occur when someone grasps the child by the chest and squeezes. N.T., Trial, at 113. According to Dr. Taroli, "the constellation of all the signs and symptoms, the history of the vomiting and the bruises on the chest, the bleeding around the brain and the retinal hemorrhages all were — all pointed to one origin which was that the child was grasped by the chest with significant force and shaken to cause bleeding around the brain and behind the eyes." N.T., Trial, at 115.

As such, the Commonwealth presented credible evidence that the defendant attempted to cause or intentionally, knowingly or recklessly caused bodily injury to another. Accordingly, the defendant's argument fails.

### b. Count 3: Endangering the welfare of children, 18 Pa. C.S.A. Section 4304(a)(1)

The defendant argues that the evidence was insufficient to sustain a conviction for endangering the welfare of children, 18 Pa. C.S.A. Section 4304(a)(1). "A parent, guardian or the person supervising the welfare of a child under 18 years of age, or a person that employs

or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection, or support." 18 Pa. C.S.A. Section 4304(a)(1). Here, the Commonwealth presented testimony from both Ms. Kerns and Ms. Miller that the defendant was the sole adult and/or parent supervising D.M. prior to her vomiting and the discovery of her bodily injuries. Furthermore, the Commonwealth presented testimony from both Ms. Robinson, and C.K., that during the time defendant was the sole adult with D.M., C.K. witnessed the defendant, in an angry state, shake and squeeze D.M. NT., Trial, at 198-200, and 234-237.

Finally, according to Dr. Taroli, "the constellation of all the signs and symptoms, the history of the vomiting and the bruises on the chest, the bleeding around the brain and the retinal hemorrhages all were – all pointed to one origin which was that the child was grasped by the chest with significant force and shaken to cause bleeding around the brain and behind the eyes." N.T., Trial, at 115.

As such, the Commonwealth presented a plethora of credible evidence that the defendant, an adult over 18 and the father of D.M., knowingly endangered D.M.'s welfare by shaking and squeezing her, violating a duty of care and protection he owed to his daughter. Accordingly, the defendant's argument fails.

2. The court erred by not granting a new trial on the basis that the guilty verdicts were so contrary to the weight of the evidence presented as to shock one's sense of justice, where:

a) Tamara Kerns' testimony was so unreliable, in that

her testimony was contradictory and inconsistent in regards to material and non-material matters, that the resulting verdicts were based upon nothing more than surmise or conjecture;

b) Rhonda Miller's testimony was so unreliable, in that her testimony was contradictory and inconsistent in regards to material and non-material matters, that the resulting verdicts were based upon nothing more than surmise or conjecture;

c) Juvenile, C.K.'s testimony, the only eyewitness testimony, was unreliable given her age at the time of the alleged incident and at the time of trial, and where C.K. had substantially difficulty in distinguishing between reality and fantasy.

"A verdict is against the weight of the evidence 'only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice.'" *Commonwealth v. Blakeney*, 596 Pa. 510, 946 A.2d 645, 652 (2008) (citing *Commonwealth v. Cousar*, 593 Pa. 204, 928 A.2d 1025, 1036 (2007). "A weight of the evidence claim is primarily directed to the discretion of the judge who presided at trial, who only possesses 'narrow authority' to upset a jury verdict on a weight of the evidence claim. Assessing the credibility of witnesses at trial is within the sole discretion of the fact-finder." *Blakeney*, 946 A.2d at 653 (internal citations omitted). Because claims a. and b. raise the same issue, the court will consolidate its response.

a. Tamara Kerns' testimony was so unreliable, in that her testimony was contradictory and inconsistent in

regards to material and non-material matters, that the resulting verdicts were based upon nothing more than surmise or conjecture.

b. Rhonda Miller's testimony was so unreliable, in that her testimony was contradictory and inconsistent in regards to material and non-material matters, that the resulting verdicts were based upon nothing more than surmise or conjecture.

In this case, the jury found the evidence and testimony provided by Ms. Kerns and Ms. Miller to be credible. Ms. Kerns' and Ms. Miller's testimony were nearly entirely consistent. The testimony included the following similarities: (1) Defendant was left alone with D.M. (and the other two children) around 3:00 – 5:00 P.M. on November 16, 2011; (2) Ms. Kerns and Ms. Miller were preparing dinner in the kitchen during that time; (3) C.K. came downstairs during dinner preparations to report that D.M. was crying; (4) D.M. began vomiting after dinner; (5) Ms. Miller went to the store to buy Pedialyte to curb D.M.'s vomiting; and (6) bruises were noticed after, but not prior to defendant's supervision of D.M. on November 16, 2011.

Furthermore, Commonwealth's Exhibits Nos. 11 and 12, which were presented to the jury, tell a story that is consistent with what the jury heard from both Ms. Kerns and Ms. Miller. Commonwealth Exhibits Nos. 11 and 12, which displayed Ms. Kerns' and Ms. Miller's Welfare Card Purchases, allowed the jury to see proof that Ms. Kerns went to Amanda's Grocery Store at 2:29 P.M. to buy supplies for dinner; and Ms. Miller went to Amanda's

Grocery Store to buy Pedialyte at 5:52 P.M.

While the defense brought out inconsistencies regarding who actually went to the store with Ms. Kerns at 2:29 P.M., it is well-settled that the "the jury is free to believe all, part, or none of the evidence..." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (2008). Therefore, on this particular inconsistency, the jury could choose to believe or disbelieve either of the witnesses' testimony.

Thus, the court does not find that the verdict was so contrary to the weight of the evidence that it shocks its sense of justice. As such, the defendant's argument is meritless, and the argument fails.

c. Juvenile, C.K.'s testimony, the only eyewitness testimony, was unreliable given her age at the time of the alleged incident and at the time of trial, and where C.K. had substantially difficulty in distinguishing between reality and fantasy.

In this case, the jury found the evidence and testimony provided by C.K. to be credible. C.K.'s testimony provided similarities with the testimony of Ms. Kerns and Ms. Miller. All three testified that the defendant was the sole adult with D.M. prior to discovery of D.M.'s injuries.

Furthermore, C.K.'s claim that D.M. was shaken by defendant is wholly consistent with Dr. Taroli's examination of the injuries D.M. sustained. N.T., Trial at 113-124. C.K. testified that Danilella was shaken, and Dr. Taroli testified that the bruises on D.M.'s "flank" represented someone's thumb, and the bruises on the "front of the chest" represented someone's fingertips as

they squeezed D.M.'s chest. N.T., Trial at 113.

The fact that C.K. was four years old at the time of her testimony is of no matter. The following exchange took place during this court's thorough competency examination of C.K.:

The Court: ... And what happens if you were to lie? That's a bad thing or a good thing?

The Witness: Bad thing.

The Court: And would you get in trouble if you told a lie?

The witness: (no audible response).

The Court: is that a yes or no?

The witness: Yes.

N.T., Trial, at 193.

Thus, because the child witness understood that someone "would punish her if she told a lie, then this is sufficiently indicative of her understanding of the duty to tell the truth." *Commonwealth v. Short*, 420 A.2d 694 (1980); see also *Commonwealth v. Payton*, 392 A.2d 723 (1978) (holding that a six year-old was competent to testify after indicating that her mother would punish her if she told a lie).

The court does not find that the verdict was so contrary to the weight of the evidence that it shocks its sense of justice. As such, the defendant's argument is meritless, and it fails.

3. The court abused its discretion by imposing consecutive sentences for Counts 2 and 3, resulting in an aggregate sentence of twenty-six (26) months' to ten (10) years' incarceration, where such sentencing scheme was manifestly excessive given the circumstances of the case.

A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. *Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super.2005). Thus, defendant's argument fails.

However, even if we were to consider defendant's claim, we note that it lacks merit. "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Lewis*, --- A.3d ----, 2012 WL 640745, *5, (Pa. Super. 2012) (citing *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006)).

Thus, sentencing is vested in the discretion of the trial court, and a sentence must be unreasonable for the Superior Court to vacate the sentence. *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa.2007).

In the case sub judice, the court's sentence was reasonable.

At sentencing the court stated the following:

The Court: The court here today will indicate that I have considered the testimony that was presented at trial, the testimony upon which the jury found this defendant guilty of simple assault and endangering the welfare of children. The court has considered the guideline ranges which were placed on the record, as well as the written presentence investigation report that the defendant adopted here today.

The court has considered that this act occurred against a six-month-old defenseless baby who had spent time in the NICU, who was already — who anybody with common sense would consider needed extra care, not to be shaken. The court has considered that it's only by the grace of what everyone believes in that this child wasn't damaged more seriously than she was. The court has considered that the defendant had a total and complete disregard for his duty as a parent, for his duty as a human being, for his duty as a decent person that you would not be harming a baby.

The court has considered that the defendant's lack of remorse says more than perhaps anything. The letter where he referred to Detective Martinez with a racist term, it isn't the racist term that the court is concerned with, but that just demonstrates that he never once said, I did something, I was angry at her, it was not good. No. The defendant has never done that. And even now at sentencing has never done that. I didn't expect him to do it at trial. We all understand he doesn't have to speak. But the fact that – Mr. Kurland makes a good

point. When the medical people came, a child already at risk, already had a sleep apnea machine, already having the problems that she did, at that moment they needed to get accurate information, and the defendant chose to protect himself, again turning his back on his duty as a parent, as a person in charge of that child at that time.

Sentencing Hg. 11/7/12, at 16-18.

Thus, given all of the circumstances noted by this court, the sentence was not excessive. The sentence was reasonable and this court did not abuse its discretion. Therefore, defendant's argument fails.

4. The Court abused its discretion by imposing a sentence of total confinement without considering the requisite factors under 42 Pa. C.S.A. Section 9725.

Defendant's argument is without merit. Section 9725 reads:

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

Given all of the circumstances noted above by the court, there was detailed consideration given to the factors under 42 Pa. C.S.A. Section 9725. The court considered the nature and circumstances of the crime; the history and character of the defendant; and the rehabilitative needs of the defendant. A lesser sentence would depreciate the seriousness of this crime, which involved a father unapologetically shaking his six-month old "at risk" baby and refusing to give accurate information to the medics in order to help her.

## IV. CONCLUSION

For the aforementioned reasons, this court respectfully requests that the defendant's appeal be denied and his conviction and judgment of sentence be affirmed.