J-S67010-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JJ JOHN WHIPKEY, | : | |
| | : | |
| Appellant | : | No. 43 WDA 2014 |

Appeal from the Judgment of Sentence December 20, 2013,
Court of Common Pleas, Washington County,
Criminal Division at No. CP-63-CR-0003170-2012

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED FEBRUARY 4, 2015**

Appellant, JJ John Whipkey ("Whipkey"), appeals from the judgment of sentence entered on December 20, 2013 by the Court of Common Pleas, Washington County, following a conviction of false imprisonment of a minor, 18 Pa.C.S.A. § 2903(b), and criminal attempt at indecent assault of a child less than 13 years of age, 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 3126(a)(7). For the reasons set forth herein, we affirm.

The trial court provided the following summary of the facts and procedural history:

> On November 4, 2012, Michelle Clark [("Clark")] went to the home of Patty Brodak [("Brodak")] on Allison Avenue in the city of Washington, Washington County.  Clark provided care for James McCave [("McCave")], who rented a room from Brodak but needed housekeeping and caretaking services because he was elderly.  On that date Clark was accompanied by her two children, five-year-old

---

*Former Justice specially assigned to the Superior Court.

[A.H.] and three-year-old [C.H.]. [Whipkey's] room was located on the second floor of Brodak's home. At some point during the visit [Whipkey] isolated [C.H.] in his room, stuffed a towel in her mouth causing her lip to bleed, and undressed her on his bed. While Clark was downstairs she could hear [C.H.] yelling for her from upstairs, and her son [A.H.] also came downstairs to summon Clark upstairs because he became aware that [C.H.] was crying and locked in [Whipkey's] room.

Clark ran upstairs and could hear her daughter crying for her from inside [Whipkey's] room. Clark pounded on the door of [Whipkey's] room, but he refused to open the door. During this time, [Whipkey] moved [C.H.] from his bed to his closet and restrained her there. The door was locked and Clark attempted to kick the door down but was unable to do so. Unable to gain entry into the room, Clark told [Whipkey] that she was going to call the police. While Clark ran downstairs to call the police, Brodak went upstairs and successfully kicked in the door to [Whipkey's] room.

Clark ran back upstairs and entered [Whipkey's] room. She found [C.H.] behind the bedroom door with only her underpants on, and [Whipkey] putting a shirt on her. Clark removed [C.H.] from [Whipkey's] room and brought her downstairs. As police arrived [Whipkey] ran through the kitchen and out the back door. Clark, McCave, and Brodak tried to physically restrain [Whipkey] but could not reach him, and responding officers pursued [Whipkey] without success. [C.H.] was transported to Washington Hospital for examination and interviewing purposes.

Trial Court Opinion, 5/8/14, at 3-5.

Whipkey was subsequently located in Pittsburgh and charged with one count of false imprisonment of a minor, 18 Pa.C.S.A. § 2903(b), and one

count of indecent assault of person less than 13 years of age, 18 Pa.C.S.A. § 3126(a)(7). On September 13, 2013, at the conclusion of a nonjury trial, the trial court found Whipkey guilty of false imprisonment and criminal attempt to commit indecent assault. The trial court sentenced him on December 20, 2013, to an aggregate sentence of seven and one half years to fifteen years of incarceration. Whipkey did not file post sentence motions.

On January 3, 2014, Whipkey filed a timely appeal. On appeal, Whipkey raises the following issues for our review, which we have reordered for ease of disposition:

> 1. Did the Commonwealth present sufficient evidence, as a matter of law, of each of the counts:
>     A. False imprisonment; and
>     B. Criminal attempt to commit indecent assault.
>
> 2. Did the [t]rial [c]ourt abuse its discretion in finding the juvenile victim/witness competent to testify?

Whipkey's Brief at 4.

For his first issue on appeal, Whipkey argues that the Commonwealth failed to present sufficient evidence to convict him of false imprisonment and criminal attempt to commit indecent assault. *Id.* at 10-12. Our standard of review in assessing the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime

> beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Helsel*, 53 A.3d 906, 917-18 (Pa. Super. 2012) (citing

*Commonwealth v. Bricker*, 41 A.3d 872, 877 (Pa. Super. 2012)).

We first address Whipkey's claim that the evidence was insufficient to convict him of false imprisonment. Whipkey asserts that "[t]he Commonwealth was unable to meet its burden of proving that [he] restrained C.H. unlawfully so as to interfere substantially with her liberty." Whipkey's Brief at 10. Whipkey specifically argues that "while [his] actions were suspicious, being locked in a bedroom with a child for a few minutes falls short of the crime of false imprisonment." *Id.*

The Pennsylvania Crimes Code defines false imprisonment as follows: "[i]f the victim is a person under 18 years of age, a person who is not the victim's parent commits a felony of the second degree if he knowingly

restrains another unlawfully so as to interfere substantially with [her] liberty." 18 Pa.C.S.A. § 2903(b). "In determining the magnitude of restraint necessary for false imprisonment, this Court has recognized that false imprisonment covers restraints which are less serious than those necessary for the offenses of kidnapping[1] and unlawful restraint[2]." *In re M.G.*, 916 A.2d 1179, 1181-82 (Pa. Super. 2007) (footnotes in original).

In the instant matter, the Commonwealth presented the testimony of C.H., Clark, and McCave in support of its case. Clark testified that her son ran to her and informed her that C.H. was locked in Whipkey's room. N.T., 9/13/13, at 32. When she ran upstairs to Whipkey's bedroom, she could hear C.H. crying for her from the bedroom, but Clark could not open the door because it was locked. *Id.* at 32-33. Clark began pounding on the door and told Whipkey that she was calling the police. *Id.* at 34. McCave corroborated Clark's testimony, stating "I could hear [Clark and Brodak] beating on the door, and I could hear [Clark] hysterically saying let me in." *Id.* at 48. Finally, C.H. testified that she could not open the door when Clark was banging on the door because Whipkey held her down. *Id.* at 19. C.H. also testified that Whipkey put gloves and towels in her mouth, causing her lip to bleed, and hid her in the closet. *Id.* at 18, 20-21.

---

[1] 18 Pa.C.S.A. § 2901(a).

[2] 18 Pa.C.S.A. § 2902(a).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence is sufficient to sustain Whipkey's conviction for false imprisonment of C.H. It is undisputed that C.H. is under eighteen years of age and that Whipkey is not a parent to C.H. Moreover, the evidence presented at trial establishes that Whipkey restrained C.H. by locking her in the bedroom, hiding her in the closet, holding her down, and preventing her from going to the door to open it.

The short duration of the restraint is immaterial. In *In re M.G.*, the appellant entered the victim's bedroom after she finished showering and closed and locked the door behind them. *In re M.G.*, 916 A.2d at 1180. The appellant ignored the victim's request for him to leave her room, and instead, reached under the victim's towel and "touched her 'private area.'" *Id.* The victim pushed the appellant and began yelling at him to leave. *Id.* The victim's sister began banging on the bedroom door, at which time, the appellant opened the door and left. *Id.* After the trial court adjudicated him delinquent on one count of false imprisonment, the appellant appealed, arguing that his interference with the victim's liberty "was not 'substantial' since the incident lasted, at most, two minutes." *Id.* at 1183. This Court rejected the appellant's argument stating, "[t]he record is quite clear that Appellant's restraint of [the victim] was unexpectedly 'cut short' when [the victim's] older sister tried to enter the bedroom. The fact Appellant's assault

was thwarted sooner than he may have desired does not require a different result in this case." **Id.**

In this case, similar to the situation presented in **In re M.G.**, the record establishes that Whipkey's attempt to restrain C.H. was cut short when Brodak successfully opened Whipkey's locked door. Thus, just as this Court held in **In re M.G.**, the short duration of Whipkey's restraint of C.H. does not compel a different result in this case. Accordingly, we conclude that the evidence was sufficient to sustain Whipkey's conviction of false imprisonment.

Whipkey also argues that the evidence was insufficient to convict him of criminal attempt to commit indecent assault. Whipkey's Brief at 11-12. The Crimes Code provides the following definition of indecent assault of a person less than 13 years of age:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> (7) the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3126(a)(7). Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101. Thus, in order to sustain a conviction for criminal attempt to commit indecent

assault, the Commonwealth was required to establish that Whipkey, with intent to commit indecent assault, engaged in "any act which constitutes a substantial step toward the commission of that crime." *See* 18 Pa.C.S.A. § 901(a) ("A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.").

At trial, C.H. testified that while she was in Whipkey's bedroom, Whipkey took her clothes off. N.T., 9/13/13, at 15-16. The Commonwealth also presented the testimony of Clark, who testified that when she finally gained access to Whipkey's bedroom, she saw her daughter crying, wearing just a pair of underwear, and Whipkey helping her put her shirt back on. N.T., 9/13/13, at 35. At that point, C.H.'s shirt was "just over her head" and did not cover her chest at all. *Id.* McCave similarly testified that he witnessed Whipkey helping C.H. put her shirt back on, and that the shirt was "on her head but not over her chest." *Id.* at 49, 53.

Whipkey does not contest the evidence presented. Instead, Whipkey asserts that "while [his] behavior and actions arouse suspicions as to what he attempted or maybe even did, a criminal prosecution may not be based upon mere suspicion and speculation, even where the acts appear to run afoul of mature, responsible and moral behavior." Whipkey's Brief at 11. Whipkey further alleges that "[e]ven when applying logical inferences to the

facts we know, one cannot conclude that sufficient evidence of an attempted indecent assault was offered." *Id.* at 12. We disagree.

This Court previously rejected the notion that "the character of an indecent assault depends entirely on its degree of success achieved by the attacker." *Commonwealth v. Capo*, 727 A.2d 1126, 1128 (Pa. Super. 1999) (stating "[the appellant's] inability to achieve more intimate contact than was in fact accomplished does not make that assault equivocal or lessen its indecency."). Rather, it is well settled that "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Helsel*, 53 A.3d at 918.

In *Commonwealth v. White*, 335 A.2d 436 (Pa. Super. 1975), this Court upheld the appellant's conviction of attempted indecent assault, concluding:

> the appellant's act of carrying the complainant to the back of an abandoned house; holding her shoulders, threatening to grab her, and lifting her skirt up approximately six inches, all of which occurred against the complainant's will, demonstrates that the appellant had the requisite intent to commit, at the minimum, an indecent assault and, furthermore, had taken substantial steps towards the completion of the reprehensible act.

*Id.* at 181.

Moreover, in *Commonwealth v. Vosburg*, 574 A.2d 679 (Pa. Super. 1990), this Court concluded that the Commonwealth presented sufficient

evidence to prove beyond a reasonable doubt that the appellant committed indecent assault on an eight-year-old girl by pulling on her underwear while she lay in bed. *Id.* at 682 (stating, "the eight-year-old victim testified that she had felt someone pulling on her underwear while she lay in bed. This was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that an indecent assault occurred[.]").

Thus, viewing the evidence in a light most favorable to the Commonwealth as verdict winner, we conclude that Whipkey's acts of locking C.H. in his bedroom and removing C.H.'s clothing are sufficient to prove that Whipkey took a substantial step toward having indecent contact with C.H., who is less than thirteen years of age. Accordingly, the Commonwealth presented sufficient evidence to prove each element of criminal attempt to commit indecent assault.

For his second issue on appeal, Whipkey asserts that the trial court abused its discretion in finding the four-year-old victim to be a competent witness. Whipkey's Brief at 8-9. "Our standard of review recognizes that [a] child's competency to testify is a threshold legal issue that a trial court must decide, and an appellate court will not disturb its determination absent an abuse of discretion. Our scope of review is plenary." ***Commonwealth v. Page***, 59 A.3d 1118, 1126-27 (Pa. Super. 2013).

In reviewing this issue, we note that in Pennsylvania,

> [e]very witness is presumed competent. A party who challenges the competency of a minor witness must prove by clear and convincing evidence that the witness lacks the minimal capacity … (1) to communicate, (2) to observe an event and accurately recall that observation, and (3) to understand the necessity to speak the truth.

*Id*. at 1129 (quoting **Commonwealth v. Pena**, 31 A.3d 704, 706 (Pa. Super. 2011)).

In this case, the trial court engaged in the following inquiry to determine C.H.'s competency:

> The Court: All right. What is your name?'
> [C.H.]: Caileigh.
> The Court: Do you have a last name?
> [C.H.]: No.
> The Court: How old are you?
> [C.H.]: Four.
> The Court: Do you know why you are here today?
> [C.H.]: Because I need to tell you what happened with [Whipkey].
>
> * * *
>
> The Court: Do you know what it is to tell the truth? When you raise your right hand and swear to tell the truth?
> [C.H.]: Yes.
>
> * * *
>
> The Court: When you are here today, do you understand that you have to tell me the truth? Do you know what the truth is?
> [C.H.]: Uh-huh.
> The Court: Do you know the difference between a truth and a lie?
> [C.H.]: Uh-huh.

The Court: Do you know that it's good to tell the truth?

[C.H.]: Uh-huh.

The Court: Is it good or bad to tell a lie?

[C.H.]: Good. If you lie, you won't be in trouble.

The Court: If you tell a lie you'll be in trouble.

[C.H.]: No.

\* \* \*

The Court: Have you ever told a lie?

[C.H.]: Well, I lied to my parents one time but then I told them the truth. …

The Court: When you told a lie, did you get in trouble?

[C.H.]: No.

The Court: Did your dad or mommy tell you not to lie again?

[C.H.]: Yes. They told me not to lie anymore so I didn't lie anymore.

The Court: So you know not to lie; is that right?

[C.H.]: Yes.

\* \* \*

The Court: If I told you this tie was purple, would that be true?

[C.H.]: Yes.

The Court: What color is this tie?

[C.H.]: Yellow.

The Court: If I told you it was purple, would that be a lie?

[C.H.]: Yes.

The Court: What color is your sweater?

[C.H.]: Pink.

The Court: If I told you that your sweater was white, would that be the truth?

[C.H.]: No.

The Court: Do you know the lady on your left over here?

[C.H.]: Traci.

The Court: She's going to ask you some questions about what happened between you and –

[C.H.]: With [Whipkey]?

The Court: Yes. She's going to ask you some questions about that, do you know that?

[C.H.]: Yes.

The Court: Will you tell us the truth about what happened?

[C.H.]: Yes.

* * *

The Court: After Traci asks you some questions, I might as you some questions and somebody else might ask you some questions and will you tell us the truth too?

[C.H.]: Yes.

The Court: Do you promise to do that?

[C.H.]: Yes.

The Court: Okay. Mr. Gorman, do you have any questions?

Mr. Gorman: Hi. My name is Brian. Can you tell us what a lie is?

[C.H.]: If you lie, you lie to your parents. If you lie, you lie to your mom and dad.

Mr. Gorman: If you lie, you lie to your mom and dad, is that what a lie is?

[C.H.]: Yes.

N.T., 9/13/13, at 8-12.

Whipkey objected to C.H.'s competency based on her age and based on the inconsistencies in her testimony regarding the difference between a truth and a lie, stating:

When the oath was administered, both hands were raised and no surname was given. There was an answer in the negative about swearing to tell the truth. There was an answer in the affirmative about whether it's true that the tie was the wrong color. There were other answers that were inconsistent. At least one that I recorded that were inconsistent with knowing the difference between a truth and lie.

> Some were consistent, some were inconsistent and that's short of reliability so we would object.

*Id***.** at 14.

The trial court determined that C.H. understood the seriousness of the circumstances and that she understood "that she is required to tell the truth as to what happened[.]" *Id***.** The trial court further concluded that C.H. was competent to testify because "all of her answers in their entirety [gave the trial c]ourt reason to believe that she can give truthful and honest testimony." *Id***.** at 15.

In our review of the record, we acknowledge that

> [a] competency hearing concerns itself with the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth. A competency hearing is not concerned with credibility. Credibility involves an assessment of whether or not what the witness says is true; this is a question for the fact finder.

*Commonwealth v. Moore*, 980 A.2d 647, 650-51 (Pa. Super. 2009) (citing *Commonwealth v. Delbridge*, 855 A.2d 27, 39-40 (Pa. 2003)).

In this case, C.H. demonstrated an ability to understand the questions asked by the trial court and communicate her responses to the questions. Although C.H.'s testimony reflects some inconsistencies regarding her understanding of the difference between the truth and a lie, we cannot conclude that the inconsistencies in her testimony provide a sufficient basis to disturb the trial court's determination of competency.

This Court has established that

> [t]here is more to a child's consciousness of the duty to speak the truth than being able to give a clear example of a lie or to understand the concept of an "oath." In fact, the trial judge's opportunity to observe the demeanor, alertness, thoughtfulness, and sincerity of a child witness may be more informative than the answers the child gives to questions such as "What is a lie?" and "What will happen to you if you tell a lie?"

*Commonwealth v. Payton*, 392 A.2d 723, 725 (Pa. Super. 1978) (citing *Commonwealth v. Mangello*, 378 A.2d 897, 899 (Pa. Super. 1977)).

The trial court in the instant matter considered the totality of C.H.'s testimony as well as her demeanor and concluded that she was "capable of giving truthful and honest testimony" and therefore, was competent to testify. Trial Court Opinion, 5/9/14, at 6; *see also* N.T., 9/13/13, at 14-15. Based on our review of the record, despite the inconsistencies in C.H.'s testimony, we discern no abuse of discretion by the trial court.

Moreover, even if the trial court was incorrect in its conclusion that C.H. was competent to testify, the error was harmless. As this Court has established,

> [a]n error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable probability that the error may have contributed to the verdict, it is not harmless. In reaching that conclusion, the reviewing court will find an error harmless where the uncontradicted evidence of guilt is so overwhelming, so that by comparison the error is insignificant.

- 15 -

***Commonwealth v. Kuder***, 62 A.3d 1038, 1053 (Pa. Super. 2013) (quoting ***Commonwealth v. Mitchell***, 839 A.2d 202, 214-15 (Pa. 2003)).

As demonstrated in our analysis regarding Whipkey's sufficiency claims raised in his first issue on appeal, the evidence in this case was overwhelming in establishing his guilt on both charges. Even without the testimony of C.H., the record is replete with support for the trial court's verdict. Both Clark and McCave testified that Whipkey locked C.H., who was three years old at the time, in his bedroom and would not open the door. N.T., 9/13/13, at 32-34, 48, 52. When Brodak successfully opened Whipkey's bedroom door, Clark testified that C.H. was standing behind the bedroom door, crying. ***Id.*** at 32-35. Clark and McCave's testimony further established that C.H. was partially undressed with her shirt just over her head, but not covering her chest, and that Whipkey was helping her put her shirt back on. ***Id.*** at 35-36, 49, 53. Clark also observed that C.H. had a bloody lip. ***Id.*** at 36. This evidence, which Whipkey does not contest, is sufficient to satisfy each element of the crimes with which he was charged. As a result, we conclude that the uncontradicted evidence in this case is overwhelming in establishing Whipkey's guilt, such that, any error in the trial court's decision to deem C.H. a competent witness, is insignificant. Whipkey's second issue on appeal accordingly fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2015