In the Interest of M.G., Appeal of M.G.

Superior Court of Pennsylvania.

Submitted Nov. 14, 2006.

Filed Jan. 30, 2007.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia for Com., Participating Party.

BEFORE: STEVENS, KLEIN and PANELLA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the disposition order entered in the Court of Common Pleas of Philadelphia County, Family Court Juvenile Division, following Appellant's adjudication of delinquency on two counts of indecent assault as to D.M. and R.J. and one count of false imprisonment as to D.M.[1] Appellant's sole issue on appeal is that the evidence was insufficient to sustain his adjudication of delinquency with regard to false imprisonment of D.M.[2] We affirm.

¶ 2 "The law is settled in this Commonwealth that in reviewing the sufficiency of the evidence, the appellate court is required to review all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, ... [as the verdict winner]." *Commonwealth v. Earnest*, 386 Pa.Super. 461, 563 A.2d 158, 159 (1989) (citation omitted). The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. *Id.*

¶ 3 Using the aforementioned standard, the relevant facts and procedural history are as follows: Appellant, who was fourteen years old, was arrested, and on June

---

1. 18 Pa.C.S.A. §§ 3126 and 2903, respectively.

2. Appellant specifically indicates that he is not challenging the sufficiency of the evidence with regard to indecent assault.

7, 2004, he proceeded to an adjudicatory hearing. During the hearing, D.M., G.M., R.J. and C.S. testified. Specifically, D.M. testified that she is ten years old, lives on South 23rd Street, and has four siblings. N.T. 6/7/04 at 5. D.M. indicated that Appellant lives on the corner of her block and, one day in March of 2004, at approximately 5:00 or 6:00 p.m., Appellant was visiting at her house. N.T. 6/7/04 at 6–7. D.M., her thirteen-year-old sister, and her two-year-old brother were at the house. N.T. 6/7/04 at 7. At some point, D.M. went upstairs to take a shower. N.T. 6/7/04 at 7. Upon completion of her shower, D.M., who was wrapped in a blue towel, went directly to her bedroom, leaving the bedroom door open. N.T. 6/7/04 at 8. After she entered and walked towards the back of the room, she heard the bedroom door close behind her. N.T. 6/7/04 at 8, 21. D.M. turned around and discovered Appellant was standing in the bedroom near the closed door. N.T. 6/7/04 at 8. D.M. testified she told Appellant to get out of her room because he was not supposed to be in there. N.T. 6/7/04 at 9. Appellant refused to leave and did not say anything. N.T. 6/7/04 at 9. Instead, Appellant walked over to D.M., and she pushed him. N.T. 6/7/04 at 9–11. Appellant reached under D.M.'s towel and touched her "private area." N.T. 6/7/04 at 9–11. As Appellant was touching her, D.M. continued to push Appellant and yelled at him to leave her room. N.T. 6/7/04 at 10. D.M. indicated that Appellant touched her "private area" for approximately two seconds and then D.M. heard her eleven-year-old sister, G.M., banging on the bedroom door. N.T. 6/7/04 at 11. D.M. testified the bedroom door appeared to be locked and she heard G.M. yelling for her to open the door. N.T. 6/7/04 at 11–12. D.M. specifically testified that she did not lock the bedroom door and the door was not self-locking when closed. N.T. 6/7/04 at 12. Appellant opened the bedroom door,

and G.M. pushed him down the stairs, indicating that he was not allowed to be in the bedroom. N.T. 6/7/04 at 12. D.M. told G.M. about the assault and then finished getting dressed. N.T. 6/7/04 at 13–14.

¶ 4 On cross-examination, D.M. testified that, when she went into the bathroom to take a shower, her cousin, R.J., was in D.M.'s bedroom and Appellant was in D.M.'s sister's room ironing R.J.'s pants. N.T. 6/7/04 at 19. D.M. testified she was in the bathroom for approximately forty-five minutes, came out, and went into her bedroom, where she subsequently discovered Appellant. N.T. 6/7/04 at 20–21. D.M. reiterated that she left the door open when she entered her bedroom. N.T. 6/7/04 at 21. D.M. testified that she believed Appellant locked the door when he shut it because, when G.M. was yelling for her to open the door, the door handle was shaking but the door was not opening. N.T. 6/7/04 at 21–22. D.M. indicated she told her mom about the assault at approximately 11:00 a.m. the next day when her mom asked her some questions concerning Appellant. N.T. 6/7/04 at 28.

¶ 5 On redirect-examination, D.M. indicated that, when Appellant first approached her in the bedroom, she pushed him to the ground and Appellant looked up her towel. N.T. 6/7/04 at 35. Appellant then touched her "private area." N.T. 6/7/04 at 35.

¶ 6 G.M. testified she is eleven years old, D.M. is her sister, and she shares a bedroom with D.M. N.T. 6/7/04 at 50–52. G.M. testified that, one day in March of 2004, she went to a store with her aunt and, when she returned to the house at approximately 6:00 p.m., she went upstairs, intending to take a bath. N.T. 6/7/04 at 51. Needing to retrieve items from her bedroom, G.M. attempted to open her bedroom door but it was locked. N.T. 6/7/04 at 52. G.M. testified that the bedroom

door is not usually locked. N.T. 6/7/04 at 52. G.M. told D.M. to open the door, and after attempting to open the door and knocking on it for approximately one minute, the door opened. N.T. 6/7/04 at 53, 75. G.M. saw Appellant attempting to hide behind the door, and D.M. was wrapped in a towel. N.T. 6/7/04 at 53. G.M. made Appellant leave and asked D.M. what had happened. N.T. 6/7/04 at 55. G.M. indicated D.M. did not tell her at that time what had happened; however, D.M. told their mother about the assault the next day. N.T. 6/7/04 at 55, 59.

¶ 7 R.J. testified he is six years old, and D.M. and G.M. are his cousins. N.T. 6/7/04 at 93. R.J. testified that one day he was visiting his cousins at their house, and Appellant was also there. N.T. 6/7/04 at 94. R.J. testified he, Appellant, and D.M. were in the basement watching television, and R.J. was wearing pajamas. N.T. 6/7/04 at 98–99. At some point, Appellant pulled down his own pants, and R.J. later told his aunt, C.S. N.T. 6/7/04 at 98–100.

¶ 8 C.S. testified D.M. and G.M. are her daughters and R.J. is her nephew. N.T. 6/7/04 at 104. C.S. testified that the day after Appellant had visited her home, R.J. told her that Appellant had asked R.J. to suck his pee-pee. N.T. 6/7/04 at 106. R.J. told C.S. that Appellant had touched R.J.'s pee-pee while they were in the basement. N.T. 6/7/04 at 107. C.S. became upset, and D.M. then informed C.S. that Appellant had touched her private area. N.T. 6/7/04 at 111. C.S. testified that, prior to

the day in question, Appellant had never been inside of her house previously. N.T. 6/7/04 at 117.

¶ 9 At the conclusion of the hearing, the trial court adjudicated Appellant delinquent of two counts of indecent assault as to D.M. and R.J. and one count of false imprisonment as to D.M. The trial court ordered Appellant to be committed to the PA Clinical School, undergo DNA testing, and imposed costs of $35.00. This appeal followed. All Pa.R.A.P. 1925(b) requirements have been met.

¶ 10 Appellant contends the evidence was insufficient to sustain his adjudication of delinquency for false imprisonment as to D.M. Specifically, he contends the evidence does not reveal that he "substantially interfered with D.M.'s liberty" in that the incident occurred in D.M.'s bedroom, D.M. was not lured to an unfamiliar place, Appellant did not threaten, intimidate or use physical force towards D.M., and the incident lasted less than two minutes.

¶ 11 18 Pa.C.S.A. § 2903, entitled false imprisonment, provides that "[a] person commits an offense if he knowingly restrains another unlawfully so as to interfere substantially with h[er] liberty."[3] 18 Pa.C.S.A. § 2903(a). In determining the magnitude of restraint necessary for false imprisonment, this Court has recognized that false imprisonment covers restraints which are less serious than those necessary for the offenses of kidnapping[4] and

---

**3.** If the victim is under eighteen years of age, false imprisonment is a felony of the second degree. 18 Pa.C.S.A. § 2903(b)(2).

**4.** 18 Pa.C.S.A. § 2901(a), related to kidnapping, provides that:
(a) **Offense defined.**-A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation,

with any of the following intentions: (1) To hold for ransom or reward, or as a shield or hostage. (2) To facilitate commission of any felony or flight thereafter. (3) To inflict bodily injury on or to terrorize the victim or another. (4) To interfere with the performance by public officials of any governmental or political function.
(emphasis in original).

unlawful restraint.[5] *See Commonwealth v. Prince,* 719 A.2d 1086 (Pa.Super.1998); *Commonwealth v. Wells,* 313 Pa.Super. 557, 460 A.2d 328 (1983). In determining whether the restraint at issue interfered with D.M.'s liberty "substantially," we give the word "substantially" its plain meaning. 1 Pa.C.S.A. § 1903 (words in a statute are to be construed according to rules of grammar and according to their common and approved usage). Thus, we determine the Legislature intended false imprisonment to cover restraints where an individual's liberty is interfered with in an ample or considerable manner. *See* Merriam Webster's Collegiate Dictionary 1174 (10th ed.1997).

¶ 12 In the case *sub judice,* viewing the evidence in the light most favorable to the *Commonwealth,* the record reveals that Appellant, who was in an area of his neighbor's house where he was not permitted to be, waited for D.M. while she took a shower by hiding behind her bedroom door. After she entered her bedroom, dressed only in a towel, Appellant shut and locked the bedroom door. Appellant then moved toward D.M., who resisted by pushing Appellant, and assaulted D.M. During this time, Appellant stood between D.M. and the bedroom door. Appellant did not open the bedroom door until after D.M.'s sister, G.M., banged on the bedroom door and yelled for D.M. to open it. G.M. testified that she was banging and yelling for approximately one minute. When G.M. entered the bedroom, Appellant attempted to conceal himself behind the bedroom door.

¶ 13 Contrary to Appellant's assertion, we have no difficulty concluding that Appellant "substantially interfered with D.M.'s liberty." That is, Appellant's actions were ample enough to qualify as being a "substantial" interference with D.M.'s liberty when he locked D.M. in her bedroom and stood between her and the door, thereby trapping her to enable his sexual assault upon her.

¶ 14 We find unavailing Appellant's argument that his actions were not "substantial" since the incident occurred in D.M.'s own bedroom and she was not lured to an unfamiliar place. Whether in her own home or elsewhere, Appellant restrained D.M. and kept her in an area where she did not wish to remain. Removing D.M. from her home or luring her to an unfamiliar place are simply not elements required for false imprisonment. Moreover, we note that this Court has found the evidence sufficient to support the crime of unlawful restraint, which covers restraints more substantial than false imprisonment, when an appellant attacked a woman in her own home. *Commonwealth v. Prince,* 719 A.2d 1086 (Pa.Super.1998) (where the victim lay near the appellant all night out of fear for her safety, the evidence was sufficient for unlawful restraint).

¶ 15 Moreover, we find unavailing Appellant's argument that his actions were not a "substantial" interference with D.M.'s liberty since he did not threaten, intimidate or use physical force towards D.M. Making threats, intimidating and/or using physical force are not stated elements of false imprisonment, although they may be the tool used by an offender in "restraining another unlawfully." *See* 18 Pa.C.S.A. § 2903(a); *In the Interest of T.G.,* 836 A.2d 1003 (Pa.Super.2003) (evidence sufficient for false imprisonment where the appellant grabbed victim by arm, took her inside the appellant's house, pulled the victim's hair, and would not let

**5.** 18 Pa.C.S.A. § 2902(a), related to unlawful restraint, provides that "[a] person commits an offense if he knowingly: (1) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury; or (2) holds another in a condition of involuntary servitude."

the victim leave even though she was crying). In any event, the record belies Appellant's claim. After hiding behind the door and lying in wait for D.M., Appellant shut and locked the door, and came towards D.M. Even though D.M. attempted to fend him off by pushing him, Appellant grabbed D.M.'s private area, thereby assaulting her.

¶ 16 Finally, we find unavailing Appellant's argument that his interference with D.M.'s liberty was not "substantial" since the incident lasted, at most, two minutes. The record is quite clear that Appellant's restraint of D.M. was unexpectedly "cut short" when D.M.'s older sister tried to enter the bedroom. The fact Appellant's assault was thwarted sooner than he may have desired does not require a different result in this case.

¶ 17 Affirmed.

¶ 18 KLEIN, J. Concurs in the Result.