J-S04043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

v.

MARVEN BELOTTE

Appellant

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
: No. 885 EDA 2022

Appeal from the Judgment of Sentence Entered March 4, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008046-2021

BEFORE: MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MARCH 1, 2023**

Marven Belotte (Belotte) appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County (trial court) following his bench conviction of simple assault and false imprisonment.[1] Belotte challenges the sufficiency of the evidence supporting his conviction. We affirm.

**I**.

This case arises from a June 2021 altercation involving Belotte and his then-girlfriend, Kimberly Kravets (Kravets). Belotte and Kravets were in a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2701(a)(1) (attempts to cause or causes bodily injury, graded as a second-degree misdemeanor (M2) and 2903(a)).

relationship from December 2020 through June 2021 and they resided together in Kravets' apartment located on the second floor of a rowhome in Northeast Philadelphia. Kravets' friend, Amala Muhammad, Muhammad's boyfriend Brian,[2] and their two-year-old daughter also lived in the apartment and were present during the incident.

**A.**

Belotte waived his right to a jury trial and proceeded to a bench trial on February 18, 2022, at which Kravets was the only witnesses. Kravets testified that on June 5, 2021, at about 8:30 a.m., she tried to end her relationship with Belotte, as she had at many points in the past. Kravets recounted that Belotte "wasn't happy to hear it," ignored her requests that he leave, and "we got into an altercation in which he snatched off a necklace from my neck that he had given me." (N.T. Trial, 2/18/22, at 11). Kravets went into the bathroom, saw that her neck was bleeding and called 911. When she locked the door, Belotte "continued to force the door open with a knife." (*Id.* at 12). Kravets went into the kitchen and told Belotte that she had called the police. She recounted that Belotte "then followed me into the front room . . . and he shoved me to the ground as I was trying to run . . . when he shoved me to the ground, I busted my knee open, and my hands also got a little scratched up." (*Id.* at 14). While Kravets was on the ground, Belotte kicked her in the

---

[2] Brian's last name is not apparent from the record.

back and ripped the pocket of her shorts open while she protected her cell phone. As Brian attempted to calm the situation, Kravets got up and called 911 a second time.

Kravets testified: "I knew I had called the police and I was trying to get myself outside [. . . but Belotte] wasn't letting me, so I had to push him down the steps, and he caught himself, and then I somehow made it running [] down the steps and when I got to the bottom, he was blocking the door and telling me 'You're not going anywhere,' that I was not allowed to leave[.]" (*Id.* at 16). Kravets received a phone call from a police officer, [and] "eventually after a couple of minutes [Belotte] finally let me to go outside," where police had arrived at the scene. (*Id.*). Kravets testified that during the altercation, she sustained a scratch to her neck and a bloody, busted knee that left her with a scar.

On cross-examination, Kravets indicated that she and Belotte argued frequently and that the incident lasted for over an hour. Kravets conceded that she tried to push Belotte down the steps and bit his arm, but explained that she took these actions in self-defense. Kravets also acknowledged that she had hurt her knee before this altercation, but that Belotte reinjured it and the wound reopened.

On redirect examination, Kravets clarified: "When I tried to push [Belotte] down the stairs, it was because I felt I was being held hostage in my house and was not allowed to go outside where the police were, and I felt I

was being held against my will, so I felt the need to defend myself and try to get him out of my way" as he blocked her path down the steps. (*Id.* at 44). Kravets explained that she bit Belotte on the arm while she was on the ground protecting her cell phone "to try to get him off of me." (*Id.* at 45).

The trial court found Belotte guilty of the above-mentioned offenses. On March 4, 2022, the court sentenced him to 6 to 12 months' incarceration, followed by two years of probation. Belotte timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

## A.

Belotte first contests the sufficiency of the evidence supporting his conviction of simple assault.[3] In doing so, Belotte characterizes the incident

---

[3]

> In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

*Commonwealth v. Hummel*, 283 A.3d 839, 846 (Pa. Super. 2022) (citations omitted).

between himself and Kravets as a "mutual domestic argument" that, at most, established simple assault graded as an M3 instead of the M2 conviction. Belotte also contends the evidence shows he lacked criminal intent to cause or attempt to cause bodily injury to Kravets, that she "exaggerated and oversold her injuries," which were superficial only, and that he and Kravets acted in a "reciprocally cruel" manner. (*Id.* at 17-19).

A defendant is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S. § 2701(a)(1). "Bodily injury" is defined as "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. "The Commonwealth need not establish the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury." ***Commonwealth v. Wroten***, 257 A.3d 734, 744 (Pa. Super. 2021) (citation omitted). "This intent may be shown by circumstances, which reasonably suggest that a defendant intended to cause injury." ***Id.*** (citation omitted). "The existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury." ***Id.*** (citation omitted).

Because Kravets was the only witness at trial, we note that it is well-settled that a single witness's testimony can establish every element of a criminal offense. ***See Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa. Super. 2018), *appeal denied*, 205 A.3d 315 (Pa. 2019). Additionally, in light

of Belotte's claim disputing the grading of the simple assault charge, we observe that the offense is generally graded as an M2 unless committed: "in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree." 18 Pa.C.S. § 2701(b)(1).

In this case, the trial court found that the evidence was sufficient to convict Belotte of simple assault against Kravets graded as an M2. It explained:

> The requisite intent to cause bodily injury could be reasonably inferred from the surrounding circumstances, specifically, Appellant's actions of shoving the Complainant in the back as she was facing away from him with enough force for her to hit the ground and bust her knee, and then kicking her in the back while she was on the ground.
>
> Appellant [] further contends that the incident was a mutual domestic argument that, at most may have established the crime of simple assault—mutual consent (M3). This trial court finds that this argument is belied by the fact that the Complainant was actually moving away from the Appellant when he shoved her to the ground and kicked her in the back.

(Trial Court Opinion, 8/24/22, at 3) (citations omitted).

We agree with the trial court's analysis and emphasize that despite Belotte's attempt to minimize this incident by characterizing it as a mutual dispute, the record does not support his claim. The evidence instead reflects that Belotte protested Kravets' ending of their relationship by physically retaliating against her, prompting her to seek police assistance. Insofar as Belotte challenges Kravets' credibility by asserting that she exaggerated the details of the event, the trial court, as fact-finder, after hearing Kravets'

testimony and observing her demeanor, was free to credit her version of events. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient to support Belotte's simple assault conviction.

**B.**

Belotte next contends the evidence was insufficient to support his conviction of false imprisonment. Belotte maintains that the Commonwealth failed to establish that he knowingly restrained or substantially interfered with Kravets' ability to move freely during the altercation, and that the evidence instead shows that they engaged "in a rancorous marathon-like argument." (Belotte's Brief, at 20; *see id.* at 7, 19-21).

A defendant commits the crime of false imprisonment if "he knowingly restrains another unlawfully so as to interfere substantially with h[er] liberty." 18 Pa.C.S. § 2903(a). In determining the degree of restraint necessary for false imprisonment, this Court has recognized that the offense covers restraints which are less serious than those necessary for kidnapping and unlawful restraint. **See In re M.G.**, 916 A.2d 1179, 1181 (Pa. Super. 2007). In determining whether the restraint at issue "substantially" interfered with a person's liberty, we give the word its plain meaning and have interpreted it to cover restraint where an individual's liberty is interfered with in an ample or considerable manner. **See id.** 1182; **see also** 1 Pa.C.S. § 1903(a) (governing statutory interpretation).

In this case, the trial court rejected Belotte's sufficiency challenge concerning false imprisonment and explained:

> After being physically assaulted by Appellant, the Complainant was attempting to exit her apartment. The Appellant then proceeded to block the exit door to the apartment and tell the Complainant that she was "not going anywhere." The Appellant did not allow her to exit her apartment until a couple of minutes after she received a call from a police officer.
>
> The Appellant's conduct in preventing the Complainant from exiting her apartment after physically assaulting her is sufficient evidence to establish that the Appellant unlawfully restrained the Complainant against her will in a manner to interfere substantially with her liberty in violation of [Section] 2903.

(Trial Ct. Op., at 4-5).

Based on the foregoing, we conclude that the record shows Belotte intentionally and substantially interfered with Kravets' liberty and ability to leave her own home by blocking her path on the stairs, warning her that she was not "going anywhere" and relenting only after police intervention. Belotte's final claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/01/2023

- 8 -