J-S11029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRIAN STEELE PARKER | : | |
| | : | |
| Appellant | : | No. 642 WDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered February 10, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005457-2023

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                           **FILED: May 6, 2026**

Appellant, Darrian Steele Parker, appeals from the judgment of sentence of 6 to 12 years' incarceration followed by 3 years' probation, imposed after he was convicted of: Rape by Forcible Compulsion, 18 Pa.C.S. § 3121(a)(1); Sexual Assault, 18 Pa.C.S. § 3124.1; Indecent Assault — Forcible Compulsion, 18 Pa.C.S. § 3126(a)(2); and False Imprisonment, 18 Pa.C.S. § 2903(a).  We affirm.

The trial court summarized the facts adduced at trial, as follows:

[P.C.], a 19-year-old woman, testified that on the evening of April 15, 2023, she and some of her friends were invited to attend a party in the downtown section of the City of Pittsburgh.  … [Appellant] picked them up in his car to take them to the party. On the way there, … [Appellant] stopped at a gas station and purchased alcohol (Twisted Teas and Four Lokos) for [P.C.] and her friends.  They arrived at the party at approximately 11:30 p.m.  Over the next couple of hours, while talking with friends, [P.C.] drank six cans of Twisted Tea.  [P.C.] and her friends decided to leave the party, and … [Appellant] was going to drive

them back to her friend[]'s house.  While [P.C.] was sitting in the back seat of the car, [one of her friends] and … [Appellant] were [engaged] in a physical altercation in the front seat.  While reaching over the front seat [to] pull[] them apart, [P.C.] dropped her phone between the front console and the passenger seat.  [By the time] she [had] located her phone, she noticed that her friends had exited the vehicle and were getting into another car.  When she tried to open the rear passenger door, it would not open, and she could not get out of the car.

… [Appellant] then reached over the front seat and tried to kiss [P.C].  She pushed him away three times.  He then joined her in the back seat[1] and began pulling up her shirt and grabbing her breasts.  [P.C.] pushed the "record" button on her phone.  … [Appellant] removed [P.C.'s] pants and, using a condom, slightly penetrated her vagina, while [P.C.] attempted to fight him off.  She was finally able to fend off … [Appellant], pull up her pants, climb over the front seat, and get out of the car through the front door.

Once she was out of the car, [P.C.] walked toward the house where the party had occurred, but she could not locate anyone.  She returned briefly to … [Appellant]'s car to charge her [dying] phone [and] was [then] able to text someone inside the house and ask them to open the door for her, which they did.

The Commonwealth played two video [] recordings [from P.C.'s phone] for the jury.  [P.C.] identified both her voice and … [Appellant]'s voice on the videos.  On the recordings, [P.C.] tells … [Appellant] "No" 7 times.

… [Appellant] testified that he made "not so harmful advances" toward [P.C.].  He denied exposing his penis to [P.C.] or penetrating her vagina.  He stated that both were fully clothed at all times.  As for the recordings, … [Appellant] stated that [P.C.] "had humor" in her voice when she told him "No".

Trial Court Opinion ("TCO"), 7/8/25, at 2-3 (internal citations to the record omitted).

---

[1] We note P.C. was unsure whether Appellant pushed down the front seat to climb over it or exited the vehicle to climb into the back seat.  N.T. Trial, 9/17/24-9/20/24, at 47.

The trial court also set forth the procedural history of the case as follows:

A jury trial was held on September 17-20, 2024. At the conclusion of the trial, the jury found [Appellant] guilty on all counts [listed *supra*]. On February 10, 2025, at Count 1 (Rape by Forcible Compulsion) the [trial] court imposed a sentence of six [to] twelve (6-12) years' incarceration and a mandatory consecutive period of three (3) years' probation. [Count 2 (Sexual Assault) and Count 3 (Indecent Assault — Forcible Compulsion) merged with Count 1 for the purpose of sentencing. At Count 4 (False Imprisonment), the trial court imposed no further penalty.] The [trial] court advised … [Appellant] of his obligation to register as a sex offender for the rest of his life.

A post-sentence motion was filed on February 10, 2025. [On February 20, 2025, Attorney Thomas N. Farrell was appointed as new counsel for Appellant and the trial court ordered Appellant to file an amended post-sentence motion within thirty (30) days. On March 25, 2025, the trial court granted Appellant's motion for an extension of time and directed Appellant to file his amended post-sentence motion within an additional thirty (30) days.] An amended post-sentenc[e] motion was filed on April 17, 2025, and denied on April 29, 2025. A timely notice of appeal was filed on May 29, 2025.

TCO at 1 (unnecessary capitalization omitted). The trial court issued an order on June 9, 2025, directing Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied on June 26, 2025. The trial court issued its Pa.R.A.P. 1925(a) opinion on July 8, 2025.

On appeal, Appellant states one issue for our review:

Whether there was sufficient evidence to convict Appellant of [F]alse [I]mprisonment, when the Commonwealth failed to prove that Appellant knowingly restrained the victim…?

Appellant's Brief at 6.

Initially, we note:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa. Super. 2011) (citation and brackets omitted).

Appellant's offense of False Imprisonment is defined as follows:

> [A] person commits a misdemeanor of the second degree if he knowingly restrains another unlawfully so as to interfere substantially with his [or her] liberty.

18 Pa.C.S. § 2903(a).

"In determining the magnitude of restraint necessary for false imprisonment, this Court has recognized that false imprisonment covers restraints which are less serious than those necessary for the offenses of kidnapping and unlawful restraint." *In re M.G.*, 916 A.2d 1179, 1181-82 (Pa. Super. 2007) (internal footnotes omitted). "In determining whether the restraint at issue interfered with [the victim's] liberty 'substantially,' we give the word 'substantially' its plain meaning." *Id.* at 1182 (citing 1 Pa.C.S. §

1903(a), which states "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage"). "Thus, we determine the Legislature intended false imprisonment to cover restraints where an individual's liberty is interfered with in an ample or considerable manner." *Id.* (internal citation omitted).

Here, Appellant argues the Commonwealth did not prove he knowingly restrained P.C. Specifically, Appellant contends:

> [P.C.] testified in this case that moments after her friends exited the front passenger and the rear driver doors of the car, she was unable to open the back passenger door. This evidence was purely speculatory, as there was nothing alleged [at] trial that Appellant performed an act[,] such as locking the door, that could cause false imprisonment. It is important to note that [P.C.] had no problem jumping into the front seat and exiting the vehicle. Thus, there was an exit.

Appellant's Brief at 16. Appellant essentially argues (1) no evidence exists to support the conclusion he locked P.C. into his car and (2) she could have exited the vehicle at any time by jumping into the front passenger seat.

Our review of the record indicates the Commonwealth's evidence established Appellant knowingly restrained P.C., substantially interfering with her liberty. At trial, P.C. testified that upon entering the back seat of Appellant's car, she broke up an altercation between Appellant and one of her friends, who were in the front seats, causing her to lose her phone between the center console and passenger seat. N.T. Trial at 44-45. She testified she proceeded to search for her phone and by the time she had retrieved it, she noticed her friends had left and were entering another car. *Id.* at 46. P.C.

testified she attempted to get out of Appellant's car, but the doors[2] would not open and she yelled out the window trying to get the attention of her friends. *Id.* at 46-47. She testified that from his location in the driver's seat, Appellant attempted to kiss her, pulling her face towards him while she repeatedly pushed him away. *Id.* at 47. P.C. testified Appellant subsequently came into the back seat, climbed on top of her, and began to sexually assault her. *Id.* at 48-50, 61. She testified that during the assault, Appellant tried to pull up her shirt, touched her breasts, pulled her pants down, and using a condom, slightly penetrated her vagina with his penis. *Id.* at 48-50. P.C. testified she then kicked Appellant off her, grabbed her phone, pulled her pants up, threw herself into the front passenger seat, and climbed out of the front passenger door. *Id.* at 50, 62.

In response to Appellant's argument on this issue, the trial court stated:

> [P.C.] credibly testified that after she found her phone, which she had dropped between the front passenger seat and the console, she saw that her friends had gotten out of … [Appellant]'s car and were getting into another car. When she tried to join them, she could not open the rear passenger side door. … [Appellant], who was sitting in the driver's seat, had to have observed [P.C.] attempting to open the door and heard her yelling for her friends to come back and get her. Instead of helping her to open the door, … [Appellant] decided to hold her captive. He then reached over the seat and tried to kiss [P.C.] by pulling her face towards

_____

[2] As noted by the Commonwealth, although the trial court and Appellant state in their recitations that P.C. could not open the rear passenger door, P.C. testified the "doors would not open" and it is unclear whether P.C. attempted only to open the rear passenger door where she was seated or whether she also attempted to open the rear driver's side door. *See* N.T. Trial at 46; *see also* Commonwealth's Brief at unnumbered 12 n.11.

him. This evidence was more than sufficient to establish that …
[Appellant] intentionally confined [P.C.] for purposes of sexually
assaulting her.

TCO at 4-5.

Upon consideration of the evidence set forth *supra*, we agree with the trial court that it was reasonable to infer Appellant intended to restrain P.C. as he made no effort to assist her, despite it being abundantly obvious she wanted out of the vehicle, and instead proceeded to sexually assault her.[3] Further, although Appellant argues P.C. could have exited through the front passenger seat at any point, the evidence shows Appellant was located in the front seat prior to climbing on top of her and, thus, P.C.'s exit was restricted by Appellant's presence.

We therefore conclude, viewing the record in the light most favorable to the Commonwealth as the verdict winner, there was sufficient evidence to prove, beyond a reasonable doubt, every element of the charge of False Imprisonment. **See Devine**, **supra**. As such, Appellant's challenge to the sufficiency of the evidence is meritless. Since Appellant is not entitled to relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[3] Additionally, the evidence that Appellant climbed on top of P.C., pulled her pants down, and inserted his penis into her vagina while she repeatedly told him "no" and fought him also supports on its own that Appellant knowingly restrained P.C., so as to substantially interfere with her liberty. **See Commonwealth v. Thomas**, 336 A.3d 1038, 1052 (Pa. Super. 2025), *appeal denied*, 349 A.3d 162 (Pa. 2025) (concluding there was sufficient evidence to support convictions of unlawful restraint and false imprisonment where the appellant sexually and physically assaulted the victim while using his body weight to hold her down).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/06/2026