2026 PA Super 96

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KHALILH JAFAR EVANS | : | |
| | : | |
| Appellant | : | No. 36 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 10, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004819-2023

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY KUNSELMAN, J.:          **FILED MAY 12, 2026**

In this case of first impression, although I do not condone Evans' behavior concerning this female teenager, because there is legally insufficient evidence to prove that Evans substantially interfered with her liberty, as a matter of law, I would vacate his conviction and sentence for false imprisonment.   Thus, I respectfully dissent.

I restate the facts here, because they are particularly important to determine whether the Commonwealth proved all the elements of false imprisonment.   On July 12, 2023, a teenager was in Willow Grove Mall, in Montgomery County, with a group of her friends.   She left them to buy some earrings.   According to the mall-security-video, at 6:54:00 p.m., the girl walked onto a downward escalator.   **See** Commonwealth's Ex. 5 at 00:20.  Evans and another man were on the escalator, about ten steps in front of her.

_____

[*] Former Justice specially assigned to the Superior Court.

Evans said something to the girl, but she had earbuds in and could not hear him. **See** N.T., 4/17/24, at 52-53. She removed her left earbud, and Evans made a waving gesture for her to come closer. **See** Commonwealth's Ex. 5 at 00:29. The girl did not approach him.

Nine seconds later, Evans reached the bottom of the escalator, where he waited for the girl. **See id.** at 00:38. The other man started walking away, as if on his own, but he never got too far ahead of Evans and the girl. When the girl reached Evans, he offered his right arm to her. **See id.** at 00:44. Evans told her "to walk with him." N.T., 4/17/24, at 54. She stepped around Evans, while looking back at his outstretched arm. **See** Commonwealth's Ex. 5 at 00:46.

The store with the earrings was 180 degrees behind the girl. Instead of making a U-turn after exiting the escalator, the girl voluntarily started walking straight ahead, *i.e.*, alongside Evans. **See** Commonwealth's Ex. 6 at 00:25-31; **see also** N.T., 4/17/24, at 90. At 6:54:33 p.m., Evans reached over with his left hand, "grabbed [the girl's] wrist, and he put it inside his [right] arm." N.T., 4/17/24, at 55; **see also** Commonwealth's Ex. 6 at 00:32-33.

They continued walking, arm-in-arm, past a few stores and kiosks. **See** Commonwealth's Ex. 7 at 00:14. Evans pressed down, so the girl could not take her hand away, but she did not struggle or cry for help. **See id.** During the incident, several other shoppers walked near or past them without any reaction or indication that they thought something odd was occurring. **See id.**

- 2 -

Moreover, Evans never hurt the girl, never threatened her, never said he was taking her out of the mall, and never said anything inappropriate or sexual. *See* N.T., 4/17/24, at 87-88. The girl "never asked him to take [her] arm out of his," and she "never said anything to anybody at the mall whom [they] were passing by." *Id.* at 91.

The girl began recording the encounter on Snapchat, because her iPhone was unlocked and in her other hand. *See* Commonwealth's Ex. 1. While they passed a Champs store, the girl asked, "Who are you?" *Id.* at 00:01-02.

Evans misidentified himself as "Alex and [said] that he was 25 years old." N.T., 4/17/24, at 55. Then, "he loosened his grip, so [the girl] pulled away as fast as [she] could and said [that she] was 13" years old. *Id.* at 68. "[B]efore that, [Evans] didn't know how old" she was. *Id.* at 91-92.

The girl removed her arm at 6:55:09 p.m. *See* Commonwealth's Ex. 7 at 00:49. Hence, Evans physically restrained the girl's wrist for 36 seconds.

She took three steps back. *See id.* at 00:50-55. Evans asked her if he was too old for her and re-extended his right arm for her to take it. The girl refused and yelled at him. *See id.* She walked away, slowly at first and then hurriedly, in the direction they had come. *See id.* at 1:07-17. The girl returned to her friends.

After about five minutes of discussion, the friends convinced the girl to report the incident to mall security. *See* N.T., 4/17/24, at 71. The security guards reviewed her Snapchat video, reported the incident to their supervisor,

and decided not to call the police. ***See id.*** at 73. The friends left the mall and waited at Panera Bread for an hour, until the girl's dad picked them up.

In the meantime, the girl called her mother, who called the police. The girl also posted the Snapchat video on her feed. In the caption, she wrote that Evans "was weird, and that's about it." ***Id.*** at 77.

When the girl arrived home, an officer of the Abington Police Department was there. The officer took the girl to police headquarters to give a statement to a detective.

Police arrested Evans, and the matter proceeded to a jury trial. At the close of the Commonwealth's evidence, the parties agreed that this was a case of first impression, because the Commonwealth had never charged false imprisonment as a standalone crime. Evans moved for judgment of acquittal on the charge on several bases, including that the evidence was insufficient to prove that he substantially interfered with the girl's liberty. The trial court denied relief and submitted the case to the jury.

During deliberations, the jury had several rounds of questions for the court, including, "Please define . . . what interfere substantially with her liberty/freedom with a focus on substantially." N.T., 4/18/24, at 28.

The court proposed giving the jury a quote from Justice (then-Judge) Stevens' Opinion in ***In re M.G.***, 916 A.2d 1179 (Pa. Super. 2007). To determine the "restraint necessary for false imprisonment, the appellate court has recognized that false imprisonment covers restraints which are less serious than those necessary for the offenses of kidnapping and unlawful

restraint." N.T., 4/18/24, at 28-29. "In determining whether the restraint at issue interfered with another individual's liberty 'substantially,' the appellate court directs the jury to give the word 'substantially' its plain meaning." *Id.* at 29. "Thus, false imprisonment covers restraints where an individual's liberty is interfered with in an ample or considerable manner." *Id.*

Defense counsel objected to the court's proposed answer, because the first sentence mentioned "kidnapping" and "unlawful restraint." *Id.* at 29-30. Evans' attorney said, "My position is just that I don't want them to be thinking about kidnapping or unlawful restraint, two charges that he's not facing." *Id.* at 30. The trial court overruled the objection and provided the *In re M.G.* quote to the jury.

Ultimately, after one juror was replaced with an alternate, the jury returned a verdict of guilty.[1] The court sentenced Evans as described above, and this timely appeal followed.

Evans raises four appellate issues, but I would address only the sufficiency issue, which I believe is dispositive; I would dismiss his remaining issues as moot. Specifically, Evan asks:

> 1. Was the evidence insufficient to establish the offense of false imprisonment where the evidence failed to demonstrate that defendant's actions interfered substantially with the complainant's liberty?

---

[1] The Commonwealth then withdrew two charges of summary harassment. Evans' then counsel mentioned, for the first time, a claim that the dismissal of Juror No. 8 violated the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

Evans' Brief at 3.

Evans attacks the sufficiency of the Commonwealth's evidence against him on the crime of a false imprisonment. He argues the General Assembly's Comment to the statute makes time of restraint relevant to the offense of false imprisonment, a time element which the trial court failed to consider when ruling upon his motion for judgment of acquittal. *See id.* at 34. In Evans' view, if his brief interaction with the girl – which lasted 36 seconds in a public shopping mall – "can be deemed a substantial interference with [her] liberty, then literally every detention can be [criminally] penalized. The comment to 18 Pa.C.S.A. § 2903 clearly states that the statute is not intended to be used in that manner." *Id.* at 35.

The Commonwealth offers no rebuttal to Evans' statutory interpretation based upon the legislative Comment. *See* Commonwealth's Brief at 25-30. Instead, the Commonwealth block quotes the analysis of the trial court. *See id.* at 28-30 (quoting Trial Court Opinion, 4/1/25, at 13-15). It simply states thereafter that "the record shows [Evans] substantially interfered with the [girl's] liberty for a prolonged period." *Id.* at 30. I disagree.

A sufficiency-of-the-evidence issue "presents a question of law, for which our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Peters*, 320 A.3d 1231, 1236 (Pa. Super. 2024), *appeal granted*, 332 A.3d 27 (Pa. 2025).

This Court asks "whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to

enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Goodis***, 299 A.3d 1008, 1014 (Pa. Super. 2023). "In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder." ***Id.*** "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Id.***

Here, there is no evidence that Evans engaged in conduct "to interfere substantially" with the girl's liberty, as the legislature intended that phrase in 18 Pa.C.S.A. § 2930. Section 2930 of the Crimes Code dictates that a person falsely imprisons someone "if he knowingly restrains another unlawfully so as to interfere substantially with his liberty." 18 Pa.C.S.A. § 2903(a)–(c).[2]

In adopting this statute, the legislature said:

> **Editors' Notes**
>
> JT. ST. GOVT. COMM. COMMENT--1967
>
> This section is derived from Section 212.3 of the Model Penal Code.
>
> *        *        *
>
> It is ***not intended*** by this section to penalize every detention which might be the basis of a civil suit for false

---

[2] The same language is repeated in all three subsections of the statute. Subsections (b) and (c) deal with false imprisonment of minors but do not change the underlying elements of the offense. Those subsections enhance the grading from "a misdemeanor of the second degree" to "a felony of the second degree" in cases, such as this, where "the victim is a person under 18 years of age." 18 Pa.C.S.A. § 2903.

imprisonment. For example, *a short detention* of a suspected thief by the victim for the purpose of questioning or recovering the stolen property would not constitute a crime under this section.

18 Pa.C.S.A. § 2903, Comment (emphasis added).[3] That Comment offers two important insights into the intentions of the drafters of Section 2930.

First, "to interfere substantially with" someone else's liberty requires the Commonwealth to prove a greater degree of interference than is needed to constitute the intentional tort of false imprisonment. In Pennsylvania, for a plaintiff to make out a *prima facie* case for the tort, the "elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." **Renk v. City of Pittsburgh**, 641 A.2d 289, 293 (Pa. 1994). Notably, the civil tort does not require the plaintiff to prove that the defendant's detention was an act "to interfere substantially" with the plaintiff's liberty. 18 Pa.C.S.A. § 2930. An act that "interferes substantially" with the victim's liberty, rather than merely detaining the victim, is the event that enhances the tort of false imprisonment to a crime.

Therefore, in Pennsylvania, all crimes of false imprisonment give rise to civil liability for the tort of false imprisonment. However, not all torts of false imprisonment necessarily give rise to the crime of false imprisonment. Thus, the teenager here may be been civilly wronged, but the actions of her detainer may not be criminal.

_____

[3] **See** 1 Pa.C.S.A. § 1939 (allowing the consideration of comments when interpreting statutes).

Second, "a short detention," without something more, is not an act that "interfere[s] substantially with [another person's] liberty." 18 Pa.C.S.A. § 2903. This is especially true where – like the example in the Comment – the restraint upon the other person's liberty accompanied no other criminal acts or attempted crimes. Similarly, in this case, as the girl originally described Evans' conduct on Snapchat, his action "was weird" (and might lead to civil liability), but did not arise to the level of this crime. *See* N.T., 4/17/24, at 77.

Furthermore, this Court has explained that, when applying the phrase "to interfere substantially" in the statute, "we give the word 'substantially' its plain meaning [under] 1 Pa.C.S.A. § 1903." *In re M.G.*, 916 A.2d at 1182. Because the legislature did not define "substantially" in Section 2930, the *M.G.* Court turned to the dictionary to define the word. We held that the legislature "intended false imprisonment to cover restraints where an individual's liberty is interfered with in an *ample or considerable* manner." *Id.* (citing MERRIAM WEBSTER'S COLLEGIATE DICTIONARY at 1174 (10th ed. 1997)) (emphasis added).

Here, the Commonwealth offered no evidence showing that Evans amply or considerably interfered with the girl's liberty when he grabbed her wrist and pinned her arm under his, while the pair walked calmly through a public mall. There was no evidence that he dragged or pulled her in a direction that she did not wish to go in. The girl was voluntarily walking alongside Evans for 12 steps when he took her wrist. And even after he pinned her arm under his, she continued calmly walking in that direction without voicing an objection or

alerting the nearby mall patrons that anything was amiss. The indisputable video evidence reflects that she and Evans continued having a civil conversation and she made no overt attempt to pull her arm away from him. **See** Commonwealth's Ex. 7 at 00:14-00:50.

Most importantly, the girl's period of restraint lasted 36 seconds in a public place. The trial court dismissed the short time which Evans pinned the girl's arm under his as legally irrelevant. The trial court believed that "The relatively short duration of the restraint [was] immaterial . . . ." Trial Court Opinion, 4/1/25, at 15. The court based that holding on this Court's unpublished decision of **Commonwealth v. Salgado-Ochoa**, 192 EDA 2023, 2024 WL 2737605 (Pa. Super. 2024) (non-precedential). In my view, the trial court's and the Majority's reliance upon that case is misplaced, because it is factually distinguishable, and its holdings on duration of a person's restraint are unpersuasive.

In **Salgado-Ochoa**, the defendant was the 21-year-old uncle of his seven-year-old victim. He "trapped her alone in a room . . . in his cousin's house, pulled his pants down exposing his penis, and repeatedly told her to touch his penis while grabbing it with one hand." **Id.** at *1. The victim "tried to go around him to leave the room, but he blocked the door." **Id.** The jury convicted the uncle of "indecent exposure, corruption of minors, and false imprisonment." **Id.**

- 10 -

On appeal, defense counsel filed an application to withdraw and an **Anders** brief.[4] Even so, the uncle desired to challenge the sufficiency of the evidence for all his crimes. In discussing the false-imprisonment conviction, this Court said the fact "[t]hat the incident lasted only one minute . . . is not determinative. Section 2903(b) does not include a temporal element . . . to obtain a conviction." **Id.** at *3. "[T]he jury was entitled to find that, for a seven-year-old child, the mental trauma resulting from being trapped in a room with an adult who closed the door, blocked her exit, and would not let her leave, was a substantial interference with [her] liberty, even if only for one minute." **Id.**

The facts of **Salgado-Ochoa** are vastly different from the facts of this case. There, a niece was physically trapped in a room of her home by a man whom she would expect to protect her. He then engaged in reprehensible sexual acts that a seven-year-old girl would not understand, much less have the will, knowledge, or capacity to resist. Additionally, the pair was alone, so the girl could not call out for help. And, when she attempted to flee, her uncle blocked the exit. The **Salgado-Ochoa** case involved a clear imprisonment in a room, alone, by someone older, much stronger, and in a position of authority over the victim.

Here, by contrast, the girl was 14 years old and in a very open, public place. Evans was a stranger to her, with whom she had no obligation to speak,

---

[4] **See Anders v. California**, 386 U.S. 738 (1967).

much less walk with voluntarily for 12 steps. If she did not want to interact with Evans, the girl was free to turn around upon exiting the escalator and head to the earring store. Moreover, even after Evans grabbed her wrist and pinned her arm under his, the girl made no overt attempt to pull away. *See* Commonwealth's Ex. 7 at 00:14-00:50. Finally, there were several nearby patrons, some who walked within feet of the pair, but the girl did not alert them to the situation. *See id.* If the girl desired rescue, all she needed to do was cry out, and most likely someone would have come to her aid or alerted mall security. Thus, these two cases are factually very different.

More importantly, the *Salgado-Ochoa* Court did not apply the definition of "substantial" that this Court adopted in *In re M.G.*, *supra*. Also, *Salgado-Ochoa* did not consider the Comment to 18 Pa.C.S.A. § 2903, which indicates that the legislature intended to **exclude a "short duration" restraint** from the scope of the statute, especially where no other criminal activity is afoot.

In fact, the non-precedential decision of *Salgado-Ochoa* engaged in no statutory construction of Section 2930(b) whatsoever. Hence, unlike the trial court and the Majority, I reject that non-precedential decision as unpersuasive when applied to the facts of this case, where the girl was not trapped in an enclosed space, by a relative, who sexually assaulted her. *See* Pa.R.A.P. 126(b)(2) (stating that "Non-precedential decisions . . . may be cited for their persuasive value.").

Neither the trial court nor the Commonwealth refers us to a case with a fact pattern similar to the unique and unprecedented situation presently

before us. Moreover, my research has revealed none. The Majority's citation to the non-precedential decision in **Commonwealth v. Lima**, 256 A3d 47 (Pa. Super. 2020), is unpersuasive, as that case involved a more serious restriction, and the appellant was charged with criminal **attempt** false imprisonment. There, the appellant was driving alongside the curb where the victim was walking, and the appellant asked her name. He then drove around the block a second time, approached the victim from behind, and grabbed her under both arms in a bear hug. This Court adopted the trial court opinion's which found that, when the appellant grabbed the victim under her arms, he "was intentionally taking a substantial step toward restraining [her] unlawfully," so as to substantially interfere with her liberties in "an ample or considerable manner'. **Id.**, at *1. That behavior, I suggest, is quite different than Evans' holding one of this girl's hands in a public mall.

Similarly distinguishable is **In re M.G.** That case involved a ten-year-old victim and 14-year-old delinquent who was visiting the victim's house. The victim took a shower, and, afterwards, wearing only a towel, she went to her bedroom. Behind her back, the delinquent was waiting for her behind the bedroom door. Once she was on the other side of the room, he closed the door and locked it.

The victim "told [the delinquent] to get out of her room," but he refused. **In re M.G.**, 916 A.2d at 1180. "Instead, [the delinquent] walked over to [the victim], and she pushed him;" he fell to the floor, looked up her towel, "reached under [her] towel, and touched her 'private area.'" **Id.** The assault

continued for two minutes while the victim's older sister banged on the door and demanded that the delinquent open the door. After assaulting the victim, the delinquent unlocked the door and tried to hide behind it.

"At the conclusion of [a delinquency] hearing, the trial court adjudicated [him to be] delinquent of two counts of indecent assault . . . and one count of false imprisonment . . . ." *Id.* at 1181. On appeal, the delinquent argued there was insufficient evidence that his conduct interfered substantially with the victim's liberty, because "the incident occurred in [the victim's] bedroom; [she] was not lured to an unfamiliar place; [the delinquent] did not threaten, intimidate, or use physical force towards [her;] and the incident lasted less than two minutes." *Id.*

This Court rejected the delinquent's claims. We explained that "threats, intimidating and/or using physical force are not stated elements of false imprisonment, although they may be the tool used by an offender in restraining another unlawfully." *Id.* at 1182. Moreover, in this situation, we dismissed the short duration of the false imprisonment of the victim in her room as unavailing, because the delinquent did not plan or want to release the victim after a short duration. Instead, the "record [was] quite clear that [the delinquent's] restraint of [the victim] was unexpectedly 'cut short' when [her] older sister tried to enter the bedroom. The fact [the delinquent's] assault was thwarted sooner than he may have desired does not require a different result in this case." *Id.* at 1183.

Other cases upholding a conviction for false imprisonment likewise involve victims who were falsely imprisoned in confined spaces, while defendants committed additional crimes against them. *See, e.g.*, *In the Interest of T.G.,* 836 A.2d 1003 (Pa. Super. 2003) (holding that the evidence was sufficient for false imprisonment, because a delinquent grabbed victim by arm, dragged her inside his house, pulled the victim's hair, and would not let the victim leave the building even though she was crying); *Commonwealth v. Enders*, 595 A.2d 600 (Pa. Super. 1991) (finding sufficient evidence for false imprisonment, because the defendants forcibly took the victim to an abandoned barn against his will; tied him to stakes in the ground over a pentagram; used him to perform a Satanic ritual; punctured his neck with nails on a collar they put around his neck; and threatened the victim that, if he told anyone what happened, they would kill him); *and also Commonwealth v. Belgrave*, 391 A.2d 662 (Pa. Super. 1978) (deeming the evidence sufficient for false imprisonment, because defendants trapped the victim in the backseat of their car, physically assaulted him, and then drove the car away with the victim restrained in the backseat).

Evans' conduct in the public shopping mall is totally unlike the criminal episodes of the above cases. Here, viewing the evidence in the light most favorable to the Commonwealth, a jury could conclude beyond reasonable doubt that Evans "knowingly restrain[ed the girl] unlawfully" by pinning her arm under his. 18 Pa.C.S.A. § 2903(b). However, the very short duration of that restraint, coupled with the fact that the girl was already walking the same

direction as Evans when he grabbed her, negates any possibility that the restraint "interfere[d] substantially with [the girls'] liberty." *Id.*

The restraint on the girl's liberty was socially unacceptable and shocking to her, especially in retrospect. But Evans did not commit the crime of false imprisonment or physically harm the girl in any way. In fact, when he loosened his grip, the girl retracted her arm and told Evans, for the first time, that she was only 13 years old (when she was actually 14). She made clear that she did not want to go with him, and Evans simply let her return the way they had come without substantially interfering with her liberty.

I would conclude that, while creepy, and while possibly sufficient to support another crime,[5] Evans' restraint of the girl was so quick and minor that the act did not satisfy the legislature's intention for the crime of false imprisonment, as a matter of law. "It is **not intended** by [Section 2930] to penalize every detention which might be the basis of a civil suit for false imprisonment." 18 Pa.C.S.A. § 2903, Comment (emphasis added). At best, Evans may be liable for the intentional tort of false imprisonment and/or a battery, but he is not culpable of the criminal offense of false imprisonment. *See Renk*, *supra*.

_____

[5] Notably, after the guilty verdict on false imprisonment here, the Commonwealth dismissed the summary harassment charges against Evans.

- 16 -

Because I believe Evans' sufficiency challenge warrants full appellate relief, I would vacate his conviction and sentence, discharge him, and dismiss his remaining issues as moot.